**Cathy Lynn MYERS, Appellant,**

v.

**Lynn S. PATTON, Managing Conservator, Appellee.**

**No. 8377.**

Court of Civil Appeals of Texas, Texarkana.

Oct. 26, 1976.

Ebb B. Mobley, III, Roberts, Harbour, Smith, Harris, French & Ritter, Longview, for appellant.

R. L. Whitehead, Jr., Longview, for appellee.

RAY, Justice.

This case involves the termination of the parent-child relationship between appellant, Cathy Lynn Myers, and her son. The natural father of the child has never been married to Cathy.

A petition was filed on behalf of Cathy Lynn Myers to terminate her parent-child relationship with her two-day-old son. An affidavit of status and an affidavit for citation by publication accompanied the petition. The trial court then ordered the child removed from the hospital and delivered to a law office. Subsequently, Cathy moved to withdraw or dismiss her petition, her affidavit and her consent to termination and subsequent adoption.

The attorney who prepared the petition and affidavit for Cathy then filed an intervening third party petition for termination of the parent-child relationship between Cathy and her son. The attorney, Appellee Lynn S. Patton, personally was the intervenor, and non-parent, non-agency petitioner. Cathy then filed a writ of habeas corpus seeking the return of her son.

The trial was to the court without a jury. The Gregg County Domestic Relations Court found grounds for termination, and named Lynn S. Patton as managing conservator of the child.

Cathy Lynn Myers, appellant, has perfected her appeal and submits four points of error for our consideration.

The evidence reveals that a couple employed the services of Patton to represent them in adopting the child born to Cathy. Patton discussed the matter with Cathy and made arrangements to pay the doctor and hospital bills for her. Cathy agreed to give up the child for adoption. Thereafter, two secretaries from Patton's law office took the affidavit of relinquishment (which was styled "Voluntary Petition for Termination") to the hospital and observed Cathy Lynn Myers read it, after which she voluntarily signed the affidavit in the presence of two witnesses and acknowledged the affidavit before a notary public.

Patton filed the petition for termination (that had been signed by Cathy) with the clerk of the Court of Domestic Relations in Gregg County. The "Voluntary Petition for Termination of Parent-Child Relationship," "Affidavit of Status," and the "Affidavit for Citation by Publication" were all signed on August 18, 1975, and were later filed on the same day with the clerk of the court. Costs were deposited by Patton, and the trial court then ordered the child removed from the hospital and delivered to Patton's law office.

On October 1, 1975, appellant moved to dismiss her voluntary petition, to revoke her affidavits and to have her child returned to her as the natural parent.

On October 1, 1975, Patton then filed a petition seeking termination of Cathy's parental relationship. The basis of the intervention was abandonment and execution of an affidavit of relinquishment, in addition to the best interests of the Myers infant.

The trial court concluded that the "Voluntary Petition for Termination of Parent-Child Relationship" was also an affidavit of relinquishment under Section 15.03 of the Texas Family Code.

The affidavit of relinquishment states on its face that it is irrevocable for sixty (60) days and not subject to dismissal, in terms of Section 15.03(d), Texas Family Code. Patton filed a petition for termination based upon the irrevocability of the affidavit and also relied on the fact that Cathy voluntarily left the child in the possession of another, not the parent, and expressed an intent not to return.

The trial court granted Cathy's motion for non-suit, found the affidavit irrevocable, and found that Cathy did leave the child in the possession of another, not the parent, and expressed an intent not to return. The court further found that the best interests of the child would be served by termination and entered a judgment terminating the parental rights of Cathy Lynn Myers.

Appellant's first point of error is that: "The trial court erred in finding that Cathy Myers knowingly, intentionally, and voluntarily signed an affidavit of relinquishment since such finding was against the great weight and preponderance of the evidence."

■ Appellant Myers does not challenge the finding of the trial court that the petition for termination was also an affidavit of relinquishment as provided for in Section 15.03, supra, nor does she challenge the irrevocability of the affidavit. The only fact of the affidavit which she attacks is the voluntariness of the signing. There is evidence to support the trial court's finding that Cathy voluntarily, knowingly and intentionally executed the affidavit of relinquishment. Witnesses testified that at the time of the execution of the affidavit Cathy knew what she was signing, that no undue influence was practiced on her, that she was under no medication that would render her incapable of knowing what she signed, that she was not emotional, there was no argument, and that she did not appear to be in any discomfort, that the documents were read to her, that they were explained to her, that she understood what she was signing, that she did not complain that she could not think clearly, that no threats, undue influence or persuasion were used to have her execute the affidavit, that the execution was freely and voluntarily done, and that Cathy acknowledged that the facts contained in the petition were true and correct. There was further testimony that it was explained to Cathy that she could not change her mind and that she could not get the baby back.

Appellant insists that she was the victim of undue influence because the signing of the documents took place on the second day she was confined to the hospital following unexpected surgery for the delivery of her baby, that she had been denied a request to see and know the sex of her baby, that she was in pain from an intravenous injection in her left arm, that she was entitled to pain medication upon request, and had taken drugs prior to her signing the papers; and further, that her mother had advised her that it would be better for Cathy to go

ahead and sign the papers because she (the mother) could not help Cathy and there was not any way that the mother could take care of the child. We do not conclude that such was undue influence within the holding of *Methodist Mission Home of Texas v. N___A___B___*, 451 S.W.2d 539 (Tex.Civ. App., San Antonio 1970, no writ). It is our opinion that this case is similar to *Hamer v. Hope Cottage Children's Bureau, Inc.*, 389 S.W.2d 123 (Tex.Civ.App., Dallas 1965, no writ). There the court stated that the mother could not withdraw her consent for adoption. The force of adverse circumstances (that it would be difficult for the mother to take care of the child) might cause the mother to consent to termination and adoption, but the pressure of those circumstances was the result of the illicit acts of appellant Myers and not due to any overreaching, fraud or misrepresentation on the part of Lynn S. Patton. Whether the affidavit was voluntarily signed was a fact issue for determination by the trial court. It is our opinion that the evidence supported the finding of the court that the affidavit of relinquishment was voluntarily executed by appellant. Appellant's first point of error is overruled.

■ Points of error two and three state that the trial court erred in finding that appellant expressed an intent not to return at the time of delivery of her baby, since there was no evidence to support that finding, or in the alternative the evidence was insufficient to support the trial court's finding. Both points will be overruled.

The affidavit of relinquishment executed by Cathy states that she tendered the child to the Court in its capacity of managing conservator and requested the placement of the child for adoption and the appointment of such other conservators as might appear to be in the child's best interest. The child was delivered to and left in the possession of another, not the parent. There was testimony that Cathy stated that she could not take care of the child, nor could she expect her parents to take care of it and that she planned to go to Louisiana to seek a job.

The evidence showed that after her release from the hospital, she left town and moved to Arkansas for the purpose of securing employment. We believe that when the appellant left the child in the hands of the court for placement for adoption she declared her intent to abandon the child to others. We hold there was sufficient evidence to support the trial court's findings that appellant had left the child in the possession of another, not the parent, with an express intent not to return.

■ Appellant insists in her point of error number four that Section 15.03 of the Texas Family Code is unconstitutional.

"This is the first instance in Texas law of a provision authorizing waiver of process prior to the filing of suit. Although the constitutionality of provisions of this kind has been questioned, opinions of the Supreme Court of the United States indicate that a party may agree in advance to submit to the jurisdiction of a given court, to permit notice to be served by the opposing party, or even to waive notice altogether. *National Equipment Rental, Ltd. v. Szukhent*, 375 U.S. 311 [, 84 S.Ct. 411, 11 L.Ed.2d 354] (1964). More recently, the court sustained the validity of a cognovit note which authorized confession of judgment by an attorney who was not retained by the defendant. The criterion for constitutionality in that case was that the defendant 'voluntarily, intelligently and knowingly' waived its right to notice and hearing, with 'full awareness of the legal consequences.' *D. H. Overmyer Co. v. Frick Co.*, 405 U.S. 174 [, 92 S.Ct. 775, 31 L.Ed.2d 124] (1972). Under the authorization contained in phrase (2), only an affidavit given to an authorized agency of the state may contain a waiver unlimited in time. Otherwise, the waiver may be for a maximum period of 60 days under subsection (d), which is actually a very limited time." Smith, Parent & Child, Texas Family Code Symposium, 5 Tex.Tech.L.Rev. 437, 443 (1974).

We hold Section 15.03 to be constitutional. Point of error number four is overruled.

The judgment of the trial court is affirmed.