David DIAZ, et ux et al, Appellants,

v.

Ronald BEYER, et ux, Appellees.

No. 6265.

Court of Civil Appeals of Texas, Waco.

Jan. 30, 1981.

Rehearing Denied Feb. 19, 1981.

L. L. Geren, Bradley & Geren, Groesbeck, for appellants.

Joe Cannon, Cannon, Cannon & Reed, Groesbeck, J. Preston Brashear, III, Garland, for appellees.

## OPINION

JAMES, Justice.

This is a suit for termination of the parent-child relationship between the child who is the subject of this suit, to wit, Terry Raye Starr, and his natural parents, to wit, Respondent-Appellants Brenda Starr Diaz and David Diaz, and for the adoption of the child by Petitioner-Appellees, to wit, Ronald Beyer and wife Angela Beyer. The Beyers are not related to the child.

This suit was filed by the Beyers originally in Dallas County against Brenda and David Diaz to terminate the parent-child relationship under the provisions of Article 15.02 of the Texas Family Code. A temporary restraining order was issued by the Dallas County District Court enjoining Brenda and David Diaz from interfering with the Beyers's possession of the child. Petitioner-Appellees, the Beyers, later amended their pleadings to include Dixie Marie Hensley, the maternal grandmother of the child, as a Respondent.

Respondent-Appellants (the Diaz couple and Mrs. Hensley) filed a plea of privilege (which was later deemed to be a Motion to Transfer) seeking to have the case transferred to Limestone County. After hearing such plea was sustained, and the cause was transferred to Limestone County.

Trial was had upon the merits before the court without a jury, after which the trial court entered judgment terminating the parent-child relationship between the child and its natural parents, and granting the adoption of said child by Mr. and Mrs. Beyer. In addition thereto the trial court permanently enjoined Respondents from interfering in any way with the Beyers's possession of the child. From this judgment the Respondents appeal.

No findings of fact or conclusions of law were requested of or filed by the trial court.

Respondent-Appellants come to this court on twenty-nine points of error. Numbers 1

through 17, inclusive, as well as Numbers 23, 24, 28 and 29 assert the trial court erred in terminating the parent-child relationship and in granting the adoption of the child for the stated reason that such findings are against the great weight and preponderance of the evidence and are not supported by clear and convincing evidence.

We have carefully considered all of Respondent-Appellants' points and contentions and hereby overrule all of same and affirm the trial court's judgment.

Brenda Sue Starr at the age of fourteen was unmarried and became pregnant in July or August 1978. She identified David Diaz, aged sixteen, as the father of her expected child, and he admitted to such paternity. At the time she became pregnant, Brenda was living with her mother, Mrs. Dixie Marie Hensley, and her stepfather, Denmond Hensley, at Mexia, Texas. Some discord developed in this situation. Brenda testified that her stepfather demanded that she get an abortion, which she refused to do; whereupon it was determined that she and her sister Linda should go to Enid, Oklahoma, to live with their natural father, Parley Starr and his wife. David Diaz learned of Brenda's pregnancy when she (Brenda) was three or four months pregnant.

After Brenda and Linda had been with their father in Oklahoma about two months, they left due to some marital discord between their father and his wife. At the encouragement of Linda, Brenda went to stay with Ronnie and Angela Beyer at their home in Garland, Texas. It was at this time there was a discussion between Brenda and Angela Beyer with reference to Brenda giving the expected child to Mr. and Mrs. Beyer for purposes of adoption on the part of the Beyers. This discussion developed into an agreement between Brenda and the Beyers whereby Brenda would allow the Beyers to take the baby at its birth and adopt it. It was further agreed that the Beyers would see that Brenda received proper medical care and a place to live during the pregnancy. Brenda then in December 1978 went to Mexia, Texas, to live

in the home of Mrs. Willie Mae Beyer, the mother of Ronnie Beyer, where she stayed for about two months until February 1979. Meanwhile, Brenda's mother, Dixie Marie Hensley, and her stepfather, Denmond Hensley, had separated; whereupon in February 1979 Brenda went to live with her mother in Mexia, Texas, where she was residing at the time the child was born on March 7, 1979.

The Beyers paid all of the doctor's and hospital bills incident to the childbirth except for one X-ray costing $20.00 which was paid for by Dixie Marie Hensley. After the child was born, Brenda never saw the child but one time, that being through a window in the maternity ward at the hospital.

The Beyers employed Honorable Harry Fender, an attorney, to handle the adoption proceedings. After the child was born, Brenda's mother, Dixie Marie Hensley, on March 9, 1979, drove Mr. Fender to the hospital, on which occasion he presented to Brenda three written instruments, one being an Affidavit of Relinquishment of Parental Rights, another was entitled, "Affidavit of Status", and the third was a written direction to the hospital to release the baby to Mr. and Mrs. Beyer. Mr. Fender testified that when he presented these papers to Brenda that he told her if she had any questions about them to let him know. Brenda read the papers and signed them. The Affidavit of Relinquishment of Parental Rights was also signed by two witnesses, and sworn to by Brenda and said witnesses. This instrument provided that it was irrevocable for 60 days and that the affiant understood that her parental rights would probably be terminated by legal action within the 60 day period. It further provided for waiver on Brenda's part of any process in connection with any suit to terminate her parental rights.

The "Affidavit of Status" in effect recited that Brenda was unmarried, that paternity of the child had not been established by law, and that David Diaz is the father of the child. This instrument was signed by Brenda and two witnesses. The third instrument, which authorized the hospital to

deliver the baby over to Mr. and Mrs. Beyer, was also signed by Brenda.

The next day after the above instruments were signed, to wit, on March 10, 1979, the Beyers took possession of the child, and said child has lived ever since said time in the Beyer home at Garland, Texas.

On March 18, 1979, Brenda Starr and David Diaz were married. This suit was originally filed by the Beyers on March 19, 1979, in a Dallas County District Court, which court on that same day issued a temporary restraining order against Brenda and David. A temporary injunction hearing was set for March 29, 1979, at which hearing neither Brenda nor David nor their attorney appeared, whereupon a temporary injunction issued. On April 2, 1979, said Dallas Court signed an order appointing Ronald and Angela Beyer as Temporary Managing Conservators of the child.

As noted, David Diaz learned of the pregnancy when Brenda was three or four months pregnant; however, he did not contribute anything toward the support of the mother or of the child at any time either before or after the birth of the child, except for $100.00 deposited in the registry of the court, hereinafter discussed. David testified that he did not come around Brenda after he learned of her pregnancy, and did not contribute to her support because he had been threatened and warned by her stepfather, Denmond Hensley, and her father, Parley Starr, to stay away. However, the record does not show that either Denmond Hensley or Parley Starr ever warned David Diaz against paying any money toward Brenda's or the child's support. The record showed that David was gainfully employed most of the time pertinent to this lawsuit. On February 26, 1980, which was at a time after the trial commenced, David and Brenda Diaz tendered into the registry of the court $100.00 as child support for the child. This is the only money paid or attempted to be paid by David Diaz towards support of the child.

Article 15.02 of the Texas Family Code, entitled, "Involuntary Termination of Parental Rights", in its pertinent parts provides:

"A petition requesting termination of the parent-child relationship with respect to a parent who is not the petitioner may be granted if the court finds that:

(1) the parent has:

(A) voluntarily left the child alone or in the possession of another not the parent and expressed an intent not to return; or—"

\* \* \* \* \* \*

(H) voluntarily, and with knowledge of the pregnancy, abandoned the mother of the child beginning at a time during her pregnancy with the child and continuing through the birth, failed to provide adequate support or medical care for the mother during the period of abandonment before the birth of the child, and remained apart from the child or failed to support the child since the birth;"

\* \* \* \* \* \*

"and in addition, the court further finds that

(2) termination is in the best interest of the child."

Our Supreme Court has recently held that the facts in an involuntary parent-child termination proceeding must be proved by the "clear and convincing evidence" standard. *In the Interest of G. M. et al* (Tex. 1980) 596 S.W.2d 846. "Clear and convincing evidence" is defined by our Supreme Court as "that measure or degree of proof which will produce in the mind of the trier of fact a firm belief or conviction as to the truth of the allegations sought to be established. This is an intermediate standard, falling between the preponderance standard of ordinary civil proceedings and the reasonable doubt standard of criminal proceedings. While the (state's) proof must weigh heavier than merely the great weight of the credible evidence, there is no requirement that the evidence be unequivocal or undisputed." *State v. Addington* (Tex.1979) 588 S.W.2d 569.

The statement of facts in the case at bar consists of 546 pages plus several exhibits.

The facts have been fully developed. The evidence is sharply conflicting concerning many aspects of the case.

Appellants urge in regard to David Diaz that while it is true that he did not marry Brenda Diaz on learning of her pregnancy and stayed away from her until after the child was born, that such was done out of fear for his life, as the evidence showed that he had been threatened by both Brenda's father and stepfather. It is also contended by Appellants that the trial court ignored the fact that David Diaz was the legitimate father of Terry Raye Starr by virtue of his having married Brenda Starr after the birth of the child as provided in Section 12.02(a) of the Texas Family Code; and that in order to allow the Beyers to adopt the child, the court must first terminate his parental rights. In regard to Brenda Diaz's parental rights, Appellants argue that while she signed an Affidavit of Relinquishment, that such was done under duress, in pain, while frightened, forlorn, rejected and neglected, and that such has been repeatedly revoked, both before and after the sixty day period during which it was stated to be irrevocable.

Appellees' position is that the trial court did not err in terminating the parental rights of David Diaz as the evidence supports the contention that David Diaz is the legitimate father of the child, but that his parental rights should be terminated based on his abandonment of the mother, Brenda Starr Diaz, during her pregnancy and his subsequent failure to support the child, coupled with the finding that it is in the best interests of the child to have such parental rights terminated. Appellees urge that in regard to the termination of Brenda Diaz's parental rights the court was also not in error. While recognizing that she had few choices available to her, and that such a situation would be difficult for a fourteen year old girl, we believe that the evidence clearly shows that her decision to sign the Relinquishment was voluntary, there being no fraud, overreaching or coercion involved, and that therefore the decision of the trial court should be upheld.

■ In our opinion the evidence shows that David Diaz, having known of Brenda's pregnancy since the third or fourth month, abandoned her until after the child was born. David contends that this was because of threats he had received from Brenda's father and stepfather. However, he never offered to pay, and did not pay, any of the medical expenses, although by his own testimony he was never warned by any of the threats against paying. After the child was born he has remained away from it. He explains this as being necessary because an injunction prevents him from visiting the child. The injunction actually enjoins Brenda and David from "Molesting or disturbing the child or Petitioners (the Beyers) or interfering in any way with Petitioners' possession of the minor child by taking or attempting to take possession of the child, directly or through any other person from the residence or any other place." and from: "Removing the child from the jurisdiction of the Court." It seems to us that this injunction by its language did not prohibit visitation of the child, but rather only the specific acts stated therein. In any event the injunction did not prohibit sending money to support the child or inquiring as to its welfare, and neither of these has been done by David or Brenda Diaz except as to the $100.00 deposited in the registry of the court after trial commenced. David Diaz legitimated the child by marrying Brenda Starr following the birth of the child, as provided by Article 12.02(a) of the Family Code. At that time therefore he, as the legitimate father, was subject to having his parental rights terminated. In our opinion, the provisions of Subdivision (1)(H) of Article 15.02 as hereinabove quoted have been met insofar as David Diaz is concerned.

■ With reference to Brenda Starr Diaz, the evidence shows that the Affidavit of Relinquishment was signed and properly executed by her. There was testimony that at the time of the signing (which was two days after the birth of the child), she did not appear to be in pain and was not under the influence of any drugs. Moreover, the evidence shows that Brenda read the papers

before she signed them, and that she stated that she understood by them she was giving up the baby. Her mother brought the lawyer to the hospital with the papers to sign, and there is no assertion or accusation that Brenda had any fraud, coercion, or undue influence practiced upon her. If she was coerced at all, it was only by the circumstances. See *Myers v. Patton* (Texarkana Tex.Civ.App.1976) 543 S.W.2d 22, no writ, where the issue was the voluntariness of the signing of the affidavit. There the court said that "the force of adverse circumstances (that it would be difficult for the mother to take care of the child) might cause the mother to consent to termination and adoption, but the pressure of those circumstances was the result of the illicit acts of (Appellant) and not due to any overreaching, fraud, or misrepresentation on the part of the (Appellee)." Appellants urge that the relinquishment was revoked in writing several times both before and after the sixty day period of irrevocability. Here, the Beyers took the baby when it was three days old, paid all the medical bills, filed this suit, and made a home for the child, all within the 60 day period. Since the birth of the child, neither Brenda nor David have made any effort to see the child. Therefore we believe there is ample proof in the record that Brenda has fulfilled the requirements of Subdivision (1)(A) of Article 15.02 in that she has "voluntarily left the child—in the possession of another not the parent and expressed an intent not to return."

■ Under Article 15.02 of the Family Code, termination of the parent-child relationship may not be based solely upon what the trial court determines to be in the best interest of the child. One or more of the acts or omissions listed in Subdivision (1) must be proved in a termination case, and in addition thereto Subdivision (2) requires proof that the termination is in the best interest of the child. Both elements must be established and the requirements of Subdivision (1) are not excused because a court may be of the opinion that Subdivision (2) has been proved. *Wiley v. Spratlin* (Tex. 1976) 543 S.W.2d 349; *Holley v. Adams* (Tex.1976) 544 S.W.2d 367; also see *In the Interest of Jones* (Tyler Tex.Civ.App.1978) 566 S.W.2d 702, NRE.

It is our view of the case that the evidence is clear and convincing that Brenda "voluntarily left the child—in the possession of another not the parent and expressed an intent not to return" as provided by Subdivision (1)(A) of Article 15.02, and that David "voluntarily, and with knowledge of the pregnancy, abandoned the mother of the child beginning at a time during her pregnancy with the child and continuing through the birth, failed to provide adequate support or medical care for the mother during the period of abandonment before the birth of the child,—and failed to support the child since the birth," under the provisions of Subdivision (1)(H) of Article 15.02. This being so, the only remaining question in regard to whether the parental rights were properly terminated is whether such is in the best interest of the child.

■ At the time of trial Brenda was fifteen years old and David was seventeen years old. They were living together in Mexia, Texas, in a home owned by Denmond Hensley, Brenda's former stepfather, paying $100.00 per month rent, which amount was admittedly less than the house would normally rent for. David worked at a machine shop with his father, while Brenda was baby-sitting. Brenda testified that the net take home pay of both her and David was about $150.00 per week. The evidence showed that they had no telephone, no car, no life, health, or accident insurance, and no savings except what is "left over" in their checking account which they do not balance. Neither finished high school, and they have no definite plans for further training or education. Their responses concerning the future of the child should they have him were characterized by a social worker as "immature." As noted, David has never seen the child, while Brenda saw him only one time through a window of the maternity ward at the hospital before the child was removed from the hospital.

In contrast, Ronald and Angela Beyer are more mature, he being 36 years old and she being 28 years old. They live in a comfortable three bedroom, two bath brick house valued at $45,000.00 in Garland, Texas. They have an 8 year old child of their own in addition to Terry Raye, who was a little over one year old at the time of trial. Terry Raye has been in their home constantly since he was three days old. All four in the family unit have grown very attached to each other. Ronald Beyer is a foreman at Rockwell International, where he has worked since 1962. He earns $1,560.00 per month gross, or about $1,200.00 per month net. Mrs Beyer is employed at Texas Instruments, where she has worked since 1978, and earns $626.00 per month gross. They have life insurance, and health, accident, and hospitalization insurance. Testimony shows that the Beyers love the child, want to adopt him, and are financially able to support him.

In viewing the entire record in this case and applying the clear and convincing standard of proof, we believe that such evidence justified the trial court in terminating the parental rights of David and Brenda Diaz and granting the adoption of the child by Ronald and Angela Beyer. Moreover, we cannot say that said findings of the trial court are so against the great weight and preponderance of the evidence as to be manifestly wrong and unjust, under the doctrine of *In Re King's Estate* (1951) 150 Tex. 662, 244 S.W.2d 660. We therefore affirm the trial court's judgment.

Appellants by their eighteenth point of error complain of language in the trial court's judgment to the effect that the appellate courts would be compelled to either affirm the trial court's judgment of termination and adoption, or else to order that the child remain with Petitioner-Appellees the Beyers. Said judgment in effect recites that if the trial court is adjudged to be in error in the termination of parental rights, that the trial court nevertheless appoints the Beyers as Managing Conservators of the child, with certain visitation rights awarded to Brenda and David Diaz, with the further provision that in such event

that the Diazes would be required to pay $100.00 per month child support. The judgment goes on to say: "—and the determination referred to in each of these findings shall be a final ruling by an appellate court rendering judgment as to such termination and not a remand for retrial or further proceedings."

Appellant contends that these provisions of the judgment are improper. We sustain this point of error, since these provisions are calculated to invade the jurisdiction of the appellate courts. However, under our view of the case, these provisions become moot; therefore such error is harmless.

We have carefully considered all of the remaining points and contentions of Appellants, and overrule same. Judgment of the trial court is accordingly affirmed.

AFFIRMED.