Patricia SMITH, Appellant,

v.

Otis McLIN, et ux., Appellees.

No. 13385.

Court of Appeals of Texas, Austin.

April 22, 1982.

Rehearing Denied May 19, 1982.

Regina Rogoff, Legal Aid Society of Central Texas, Austin, for appellant.

William W. Rittenthouse, Austin, for appellees.

PHILLIPS, Chief Justice.

This is a termination of parental rights case. Appellant, Patricia Smith, is the subject child's natural mother. Appellees, Otis and Deanna McLin, petitioned the trial court for termination of appellant's parental rights and sought to adopt the child. Deanna McLin is the child's great aunt. Trial to the court consumed three days; the trial court entered a decree terminating appellant's parental rights and granting adoption.[1]

We affirm the trial court's decree.

Section 15.02 of the Texas Family Code sets out the circumstances under which parental rights may be terminated. The statute, as pertinent to this case, provides:

§ 15.02 Involuntary Termination of Parental Rights

A petition requesting termination of the parent-child relationship with respect to a parent who is not the petitioner may be granted if the court finds that:

(1) the parent has:

(A) voluntarily left the child alone or in possession of another not the parent and expressed an intent not to return;

\* \* \* \* \* \*

*and* in addition, the court further finds that

(2) termination is in the best interest of the child. Tex.Fam.Code Ann. § 15.02 (Supp.1982). (Emphasis added)

The provisions of § 15.02(1)(A) comprise one of eleven categories of parental misconduct or other action which may justify terminating a parent-child relationship, provided termination is "in the best interest of the child," an additional require-

---

1. Appellant's husband, Charles Ernest Smith, was also a respondent in the trial court. The trial court terminated his parental rights and he chose not to appeal.

ment set forth in § 15.02(2). Proof must be by clear and convincing evidence and this Court must strictly scrutinize the proceeding below. *In re G.M.,* 596 S.W.2d 846 (Tex.1980).

Appellant, on both no evidence and insufficient evidence points, challenges the trial court's findings with respect to § 15.-02(1)(A) and the best interest of the child.

After carefully considering the record in this case, we conclude that appellees did prove by clear and convincing evidence that appellant voluntarily left the child alone or in the possession of another not the parent and expressed an intent not to return. Appellees also proved by clear and convincing evidence that termination would be in the best interest of the child.

In late December 1977, appellant gave her six month old son to the appellees along with his clothes, his bed, and his immunization record. Appellant now claims that she felt the arrangement was temporary. Both appellees testified that they told appellant they would take the boy only if the arrangement were permanent. According to appellees' testimony, appellant orally assented to the permanent arrangement. Hence, in our view, there is some direct evidence that appellant expressed an intent not to return, and accordingly, her no evidence contention is overruled.

With respect to appellant's claim of factual insufficiency, there is in addition to the direct evidence referred to above, circumstantial evidence consistent with an expressed intention not to return. In March 1978, appellees provided appellant with an affidavit of relinquishment. The instrument, which appellant signed before a notary, manifested a clear intent to completely sever her ties with the child. Because the instrument was defective it could not, standing alone, serve as the proof necessary for termination. It is, however, evidentiary as to appellant's expressed intent not to return. Appellant testified that she did not read the document and believed it was a form allowing the child to benefit from appellees' health insurance. This testimony was directly contradicted by the family member, one E. J. Lott, who actually delivered the instrument to appellant and accompanied her to the notary. Mr. Lott testified that appellant knew the instrument could end her relationship with the child and that appellant was happy with the decision.

The Waco Court considered an affidavit of relinquishment which had been revoked as evidence in support of the requirement of § 15.02(1)(A). *Diaz v. Beyer,* 611 S.W.2d 726 (Tex.Civ.App.—Waco 1981, writ ref'd n. r. e.). In *Diaz,* a revoked affidavit of relinquishment coupled with no attempts to see the subject child was considered to be clear and convincing evidence that the parent "voluntarily left the child in the possession of another not the parent and expressed an intent not to return." 611 S.W.2d at 731. Appellant, in this case, had no contact with the child between December 1977 and April 1980.

In this record, there is additional circumstantial evidence consistent with an expressed intent not to return. In June 1978, appellant telephoned appellees. The McLins testified that appellant did not initiate any inquiry about the boy during the call. Finally, in May 1979, appellant wrote the appellees a letter expressing warm feelings for the child, but stressing that she made "the right decision" in giving him up. Appellant explained the letter by testifying that she felt her rights had already been terminated and there was nothing she could do to get the boy back.

Circumstantial evidence may be sufficient to prove grounds under § 15.02. *Higgins v. Dallas County Child Welfare Unit,* 544 S.W.2d 745 (Tex.Civ.App.—Dallas 1976, no writ). Also, courts may look to a combination of direct and circumstantial evidence. *Gonzalez v. Texas Department of Human Resources,* 581 S.W.2d 522 (Tex.Civ. App.—Corpus Christi 1979, writ ref'd n. r. e.). Finally, a trial judge is not required to accept the truth or accuracy of a mother's testimony as to her past actions or her future intentions. *D—— F—— v. State,* 525 S.W. 2d 933 (Tex.Civ.App.—Houston [1st Dist.]

1975, no writ); *see also In re E.S.M.*, 550 S.W.2d 749 (Tex.Civ.App.—Houston [1st Dist.] 1977, writ ref'd n. r. e.).

■ Under the above authorities, this Court has followed the Supreme Court's instruction from *In re G.M., supra,* and carefully scrutinized the proceeding below. The weight and probative force of evidence, of course, is entirely for the trier of fact. Likewise, the trier of fact, the district court in this instance, is the exclusive judge of the credibility of the witnesses, and the weight to be attached to their testimony. *Harrell v. Sunylan Co.,* 128 Tex. 460, 97 S.W.2d 686 (1936). The trier of fact may believe a witness although he has been contradicted, and, likewise, it may believe the testimony of one witness and reject the testimony of other witnesses. The court may accept part of the testimony of one witness and disregard the remainder. There is clear and convincing evidence that appellant left the child, expressing an intent not to return.

In *Holley v. Adams,* 544 S.W.2d 367 (Tex. 1976), the Supreme Court compiled a list of factors which may be considered in determining the best interest of the child. Several are relevant to this case:

1. the emotional and physical needs of the child now and in the future;
2. the parental abilities of the individuals seeking custody;
3. the plans for the child by the individuals seeking custody;
4. the stability of the home;
5. the acts or omissions of the parent which may indicate that the existing parent-child relationship is not a proper one;
6. any excuse for the acts or omissions of the parent. 544 S.W.2d at 372.

■ The evidence as to best interest in this case supports the trial court's decree. In December 1977, when appellant turned the child over to appellees, she was in financial difficulty and in a depressed state. She gave her other two children to relatives at that time also. There was testimony that appellant did not properly nourish and clothe the boy during the six months she had him. His immunizations were not current and he spent most of his time being cared for by an infirm, eighty year old woman. Appellant had no contact with the boy between December 1977 and April 1980 and personally contributed nothing to his support during that period.

At all times relevant to this case, appellant has been married to Charles Ernest Smith. For most of this time, Smith has been either a prisoner or a fugitive from justice. Appellant expresses no intent to divorce Smith and has resided with him whenever he is at liberty. She has, however, been involved with other men during his absences. Because appellant intends to remain married to Smith and because he faces lengthy penitentiary time, it is unlikely that appellant will be able to provide a "two parent" family life for the boy for the foreseeable future.

During the few months before trial, appellant did add structure to her life. She is working steadily and living with her mother in Fort Worth. Her other children are with her. She sought counseling and medication for her depression, but the record clearly indicates that appellant's mother is supplying the bulk of the stability and structure.

The McLins offer a more "traditional" family unit having been married for sixteen years at the time of trial. Otis McLin is a community college professor; his class schedule is flexible so that he is able to spend time with the boy during the day. Deanna McLin is a school teacher. The McLins are in their forties and are dedicating much of their energy and attention to the boy. Deanna McLin did testify, however, that two of the children she has raised have had trouble with the law.

Finally, the child has been with the McLins since December 1977, when he was six months old. He has grown up knowing only them as his parents.

Applying the relevant *Holley* criteria to the facts of this case, it would appear that appellant acted as a poor mother while she had the boy. She has been away from him

for over four years at this point. She offers, as excuse for her acts and omissions, her depression and financial troubles. She has shown recent improvement, but appellant has not demonstrated any ability to care for herself without substantial help from her own mother.

The McLins, on the other hand, have provided a stable home for over four years and have demonstrated the desire to do so in the future. We conclude that the best interest of the child is served by not disturbing his current relationship with the McLins.

Clear and convincing evidence supports the court's finding under § 15.02(1)(A). That the best interest of the child is served by termination was also proved by clear and convincing evidence. Consequently, the trial court's decree granting termination is affirmed.

POWERS, Justice, dissenting.

I respectfully dissent. The acts and omissions relied upon by the trial court as a basis for terminating appellant's parental rights resulted solely from her attempt to accomplish the formal *voluntary* relinquishment of her parental rights and the adoption of her child by appellees. These acts and omissions constitute the *only* evidence tending to establish the factual propositions set forth in subsections (A), (B), and (C) of § 15.02(1) of the Texas Family Code, in this proceeding initiated by appellees, neither of whom is a parent of the child, aimed at the *involuntary* termination of appellant's parental rights. No legal impediment prevented appellant's changing her mind about the adoption and her voluntary relinquishment of parental rights. I therefore conclude that the evidence of appellant's acts and omissions, resulting solely from her attempt to accomplish the voluntary relinquishment of her parental rights and the adoption of her child by others, constitutes no evidence, and alternatively does not amount to clear and convincing evidence, in support of the trial court's findings of fact under subsections (A), (B), and (C).

The essential facts are undisputed. Appellant was in financial and other difficult circumstances. Appellees, one of whom is appellant's great aunt, initiated a discussion with appellant about her child, saying they wished to adopt the child but only on the condition that the arrangement be permanent. Appellant agreed to the proposed adoption and a few days later she surrendered the child to appellees when they came for him. She then executed at appellees' request an affidavit expressing her consent to the adoption and her relinquishment of parental rights. The affidavit did not, however, comport with the applicable statutory requirements (§ 15.03 of the Texas Family Code) and was without legal effect as a relinquishment of parental rights and a consent to adoption. Appellant did not support her child after surrendering him to appellees, apart from five dollars she mailed to him on one occasion. Then, on learning that appellees had filed suit seeking an involuntary termination of her parental rights and adoption of the child, because the affidavit was invalid, appellant changed her mind and refused to relinquish her parental rights voluntarily. She now resists appellees' suit for adoption of the child and claims her parental rights.

CURRENT STATUTORY PROVISIONS

Appellees may not adopt appellant's child unless her parental rights are terminated, either voluntarily or involuntarily. The grounds for involuntary termination of such rights are set forth in § 15.02 of the Texas Family Code. For our purposes, the relevant portions of that statute read as follows:

A petition requesting termination of the parent-child relationship with respect to a parent who is not the petitioner may be granted if the court finds that:

(1) the parent has:

(A) voluntarily left the child alone or in the possession of another not the parent and expressed an intent not to return; or

(B) voluntarily left the child alone or in the possession of another not the

parent without expressing an intent to return, without providing for the adequate support of the child, and remained away for a period of at least three months; or

(C) voluntarily left the child alone or in the possession of another without providing adequate support of the child and remained away for a period of at least six months; . . . .

One may not properly evaluate the evidence in the present case except in reference to the three subsections quoted above. It is immediately apparent to me that the majority, in its evaluation of the evidence, has simultaneously engaged in a silent exercise of statutory interpretation. The three subsections address parental actions taken *outside* the context of a parent's consent to adoption and an attendant voluntary relinquishment of parental rights. They do not purport to address the situation or be operable when a parent consents to adoption and agrees to relinquish her parental rights, although § 15.03 and § 15.02(1)(K) do address and purport to be operable in the latter circumstances. Moreover, the wording of the three subsections does not easily fit the circumstances of an adoption based upon voluntary parental consent. The majority, therefore, has not simply measured the evidence against the plain words of the statute and found it satisfied. It is upon the basis of statutory construction that I differ with the majority; I would assign a different meaning to the three subsections—a meaning that does not encompass the circumstances shown by the evidence in the present case.

The majority interprets the three subsections to encompass the conduct of a parent when she attempts to accomplish an adoption with her consent, which implies, of course, her voluntary relinquishment of parental rights. Thus, it is said that the appellant's actions may be characterized as leaving the child in the possession of another; they amount simultaneously to an expression of intent not to return and a failure to express an intent to return; they constitute a failure to provide adequate support; and, they constitute a "remaining away" for periods of three and six months.

I believe the majority's interpretation of the three subsections is not only contrived but legally incorrect because it lies outside the plain meaning of the subsections; but if the words of the three subsections will reasonably bear the meaning assigned to them by the majority, then each of the three subsections, being so interpreted and applied, is unconstitutional for overbreadth, vagueness, and denial of appellant's right to substantive due process of law. I will express first my view of the proper interpretation of subsections (A), (B), and (C) of § 15.02(1).

The three subsections contemplate a parent's *unilateral* conduct respecting the legal and natural *obligations* she owes to her child. The words of the subsections do not easily fit a *bilateral* arrangement between the parent and another for the latter's adoption with parental consent, and attendant conduct by the parent to that end, including the surrender of her parental *rights*. While the latter arrangement and conduct may be made to fit the words of the subsections, from a semantic standpoint, the predecessors of the three subsections, and the judicial interpretation given the earlier statutes, place beyond dispute the proposition that they are to be understood as addressing a parent's conduct which amounts to a unilateral renunciation of parental *obligations*, or abandonment of the child, and not a renunciation of parental *rights*; indeed, the latter is specifically covered in § 15.03 and § 15.02(1)(K) of the Code.

## FORMER STATUTORY PROVISIONS

The Texas Family Code became effective January 1, 1974. Many of its provisions have an origin in earlier statutes which are now repealed. With respect to the adoption of children, one such statute, Tex.Rev.Civ. Stat.Ann. art. 46a, § 6(a)(1969) (repealed 1974), permitted the judges of certain courts to supply the requisite parental consent in the following circumstances:

[I]f a living parent or parents shall *voluntarily abandon* and desert a child sought

to be adopted, for a period of two (2) years, and shall have left such child to the care, custody, control and management of other persons, or if such parent or parents shall have not contributed substantially to the support of such child during such period of two (2) years commensurate with his financial ability, then, in either event, it shall not be necessary to obtain the written consent of the living parent or parents in such default, and in such cases adoption shall be permitted on the written consent of the Judge of the Juvenile Court of the county of such child's residence; or if there is no Juvenile Court, then on the written consent of the Judge of the County Court of the county of such child's residence. (emphasis added)

Section 6(c) of the statute also dispensed with the necessity of parental consent to an adoption when the parents' rights in the child had "been terminated by order of the Juvenile Court or other court of competent jurisdiction; provided however, that in such cases adoption shall be permitted only upon the written order of the court terminating such parental rights." Section 6(f) provided for the voluntary relinquishment of parental rights in a writing "duly acknowledged, giving the name, date and place of birth of said child," which recites that the parents "agree to permanently surrender the care, custody, and parental authority of and over said child, and consent to its adoption . . . ."

Under these statutes, a child could be placed for adoption if found to be a "dependent or neglected child" in judicial proceedings governed by Tex.Rev.Civ.Stat. Ann. arts. 2330 through 2335 (1971) (repealed 1974). These are the proceedings referred to in § 6(c) of article 46a, *supra*. Article 2330 supplied for use in such proceedings the following definition:

The term "dependent child" or "neglected child" includes any child under 18 years of age who is dependent upon the public for support or who is destitute, homeless or *abandoned*; . . . . (emphasis added)

The principle of *abandonment* was thus found in two previous statutes, that is, in article 46a, § 6(a) and in article 2330, the first dealing with adoption and the second with proceedings inquiring whether the child was "dependent or neglected," and therefore eligible for "disposition" as the court deemed best "for its moral and physical welfare," including adoption by others. Tex.Rev.Civ.Stat.Ann. art. 2335. The Legislature did not, however, attempt to define the word "abandonment" as it was used in article 2330. *Heard v. Bauman*, 443 S.W.2d 715 (Tex.1969).

Plainly, as one writer has said, subsections (A) and (B) of Texas Family Code § 15.02(1) supplant the part of former article 2330 "which provided that a child could be declared dependent or neglected, if 'abandoned' by his parents." Smith, Commentary, Texas Family Code Symposium, 5 Tex.Tech L.Rev. 439 (1974). The writer distinguishes between subsections (A) and (B) by saying that the former "deals with intentional, expressed abandonment of the child," provable by the act of abandonment "combined with an express intent not to return," while the latter "authorizes termination after three months' abandonment of the child, as evidenced by leaving the child in someone else's care or by itself, without making provision for its support." *Id.* The writer concludes by saying that both subsections "are designed to clearly define 'abandonment' and to be sufficiently specific so that any constitutional question based upon vagueness is removed." *Id.*

We are, when interpreting codified statutes such as the Texas Family Code, invited to consider previous common law principles as well as previous statutory provisions. Tex.Rev.Civ.Stat.Ann. art. 5429b, § 3.03(4) (1958).

Before enactment of the Texas Family Code, the Supreme Court of Texas had occasion to consider a case very similar to the one now before this Court: *Hendricks v. Curry*, 401 S.W.2d 796 (Tex.1966). In that case, the mother executed and delivered her written consent to the adoption of her child by others, to whom she delivered possession of the child. When she withdrew her consent, as she was legally entitled to do, the

adopting parents sued to obtain adoption of the child without her consent, alleging that she had abandoned the child by surrendering it to their possession and failing thereafter to support it herself, which are essential allegations in the present case. The trial court found the child had, indeed, been abandoned by the mother. The Supreme Court of Texas disagreed, saying:

> The trial court's finding of abandonment is based upon the admitted fact that the mother gave up possession of her child and consented to its adoption. The mother testified that before executing the consent to adoption she was assured by the attorney obtaining it that she could withdraw consent at any time prior to six months' residence of the child in the home of the adoptive parents. However, this testimony cannot be used as evidence of non-abandonment; the trial judge had a right to disbelieve it, and he evidently did disbelieve it inasmuch as he refused to find that the assurance had been given. We are thus left with the bare question of whether "abandonment" within the meaning of Article 2330 can be found as a fact from execution by a parent of a written consent to adoption and delivery of possession of the child to the proposed adoptive parents. We hold that it cannot.
>
> It is settled law in this State that consent to adoption of a child, where required, can be withdrawn at anytime before an adoption decree is entered. Wilde v. Buchanan, 157 Tex. 606, 305 S.W.2d 778 (1957); Boyed v. Wilson, Tex.Civ.App., 258 S.W.2d 223 (1953), writ refused. It follows that the acts of a parent in executing a consent to adoption and delivery of possession of a child pursuant thereto are done with the reserved legal right to withdraw consent at any time before entry of an adoption decree. With this legal right reserved, the parent does not "abandon" the child. A child is "abandoned" within the intent and meaning of Article 2330 when it is "deserted" by its parent or parents.

401 S.W.2d at 800 (emphasis added).

The Court then referred to the common-law definition of "voluntary abandonment," supplied by the decision in *Strode v. Silverman*, 209 S.W.2d 415, 419 (Tex.Civ.App.— Waco 1948, writ ref'd n. r. e.):

> Voluntary abandonment, as used in the adoption statute, . . . is used more in a sense of a willful act or course of conduct, and such as would imply a conscious disregard or indifference to such child in respect to the parental obligation that the parent owes to such child.

401 S.W.2d at 801 (deletion original).

Comparing such circumstances to the case before it, the Supreme Court continued:

> The definition is a sound one and should also be followed in determining whether a child is an "abandoned" child within the meaning of Article 2330. *It is all too plain to permit of quibbling that the acts of Mrs. Hendricks in signing the written consent to adoption and in giving up possession of her child were not such acts "as would imply a conscious disregard or indifference to such child" in respect to the parental obligations she owed her child.*

401 S.W.2d at 801 (emphasis added).

The Court said, in so many words, that the mother's conduct in executing the relinquishment of parental rights, consenting to its adoption, voluntarily surrendering possession of the child preparatory to its adoption, and not supporting it thereafter, was "unquestionably . . . for the purpose of better providing for the child's welfare," and evidence of such conduct does not support a finding of abandonment. We have nothing more than this in the record of this case.

The *Hendricks* case is precisely on point; the evidence of appellant's conduct, having the purpose of voluntarily relinquishing her parental rights and consenting to her child's adoption by appellees, that is, surrender of the child to appellees for that purpose, her failure to support her child thereafter, and her execution and delivery of the affidavit, will not support a finding under any provision of § 15.02(1) which is founded upon the principle of abandonment, which subsection (A), (B), and (C) unquestionably are in my opinion.

Given the origin of subsections (A), (B), and (C) of Texas Family Code § 15.02(1), it seems obvious to me that the Legislature intended that these subsections embody the idea of voluntary abandonment previously set forth in the statutes construed in *Hendricks v. Curry, supra.* See House Judicial Affairs Committee hearing transcript, March 6, 1979, considering H.B. 735, amending § 15.02 and other sections of the Code. These three subsections merely supply in more explicit form those circumstances from which one may justifiably draw the conclusion that a parent has consciously renounced his parental obligations, either expressly or by implication, or the parent's manifest indifference toward those obligations justifies one in drawing the conclusion that he intends not to perform them. *Hendricks v. Curry, supra*; 5 Tex.Tech L.Rev. 439, *supra.*

It is equally clear to me that the rule of the *Hendricks* case survives the enactment of the Texas Family Code and controls our interpretation of subsections (A), (B), and (C) of § 15.02(1). The rule is founded upon truth and fundamental fairness. When a parent surrenders possession of his child in contemplation of its adoption by others, to which the parent consents, and with the same purpose the parent executes an affidavit relinquishing her parental rights as permitted by § 15.03 of the Code, the parent is, in a larger sense, not disregarding her parental obligations but is attempting affirmatively to provide for her child's welfare through others. *Hendricks v. Curry, supra.* And if the attempted relinquishment and consent to adoption are invalid, as they admittedly were in the case before us, the parents conduct in that regard ought not in fairness be placed in an altogether different and false context where, by a purblind, contrived, forced, and legalistic statutory interpretation they are held in draconian fashion to have an abstract meaning that does not fit the meaning common sense and usage would assign to them. Neither subsections (A), (B), nor (C) fit the circumstances of an agreed adoption and relinquishment of parental rights unless they be so interpreted.

Moreover, the face of § 15.02(1) compels one to infer that the Legislature never intended these subsections to apply in the present circumstances. That body was careful to supply § 15.03 as a means of voluntary relinquishment of parental rights, to be given effect through subsection (K) of § 15.02(1) in the specific case where the natural parent changes her mind, after executing and delivering the requisite affidavit, and resists involuntary termination of her parental rights, as appellant did here.[1]

---

1. Section 15.03 of the Code requires that "[a]n affidavit for voluntary relinquishment of parental rights must be signed after the birth of a child by the parent, whether or not a minor, whose parental rights are to be relinquished, witnessed by two credible persons, and verified before any person authorized to administer oaths." The section specifies as well certain information which the affidavit must contain. Subsection (d) of § 15.03 provides that the affidavit of relinquishment is irrevocable when the Texas Department of Human Resources, or an agency authorized by the department to place children for adoption, is named managing conservator by the terms of the affidavit. Where that is not the case, the subsection provides as follows:

> Any other affidavit of relinquishment is revocable unless it expressly provides that it is irrevocable for a stated period of time not to exceed 60 days after the date of its execution.

Section 15.02(1)(K) of the Code permits involuntary termination of parental rights if the court finds that the parent has "executed before or after the suit is filed an unrevoked or irrevocable affidavit of relinquishment of parental rights as provided by Section 15.03 of this code." In other words, an affidavit evidencing the voluntary relinquishment of parental rights is enforceable against a parent in a suit for involuntary termination, during the period of irrevocability, which circumstance may arise if the parent changes her mind after execution of the affidavit.

Section 15.03 illustrates that in contemplation of the Code, a parent is free to change her mind and reclaim her parental rights, except in limited circumstances: when an official agency is designated managing conservator; or, in all other cases, when the affidavit is expressly made irrevocable, the period of irrevocability being limited by law to 60 days.

The residual right of revocation is readily apparent from § 15.03. It should follow as a matter of course that parental conduct which is aimed at accomplishing the voluntary relinquishment of parental rights, and an adoption of the child, and which precedes the parent's

The majority would allow an involuntary termination of parental rights to be based upon an admittedly invalid affidavit and a parent's conduct which has reference only to the transaction contemplated in that instrument, citing *Diaz v. Beyer*, 611 S.W.2d 726 (Tex.Civ.App.—Waco 1981, writ ref'd n. r. e.). The majority has, in my view, as the Court did in *Diaz*, subverted § 15.03 and will encourage something substantially less than strict adherence to the provisions of that statute.

The majority relies only upon the admitted and obvious facts: appellant intended the placing of her child with appellees to be a permanent arrangement, she surrendered the child to appellees when they requested she do so, and she did not support the child thereafter. Nevertheless, the reality is that appellant's conduct in that respect was aimed at appellees' adoption of the child with appellant's consent, as the attempted formal relinquishment of parental rights and the remainder of the evidence in the case make clear. Appellant simply changed her mind before consummation of the adoption as she had every right to do, her affidavit being admittedly insufficient under the law. This was the risk to which appellees exposed themselves, it is sad to say, by their failure to obtain a valid formal relinquishment and consent to adoption, and the very circumstances appellees procured by their negligence. We may not, in an attempt to balance the equities between appellant and appellees, disregard the force and dignity of the legal relationship between parent and child and the high respect the State must pay to that relationship. See *Santosky v. Kramer*, —— U.S. ——, 102 S.Ct. 1388, 71 L.Ed.2d 599 (1982).

It has not been adjudged, or even alleged, that appellant neglected or abused her child and that her conduct in that regard warrants termination of her parental rights over her protest. Admittedly, the record contains evidence which supports the proposition that the child would be in better circumstances if adopted by appellees. But termination of parental rights may not be based solely upon so slight a ground. *Holley v. Adams*, 544 S.W.2d 367 (Tex.1976).

## CONSTITUTIONALITY OF THE CURRENT STATUTES, AS APPLIED TO THE FACTS OF THE CASE

The question then arises whether termination may constitutionally be based upon a ground only incrementally more substantial, namely the conduct of a parent in her attempt to accomplish the adoption of her child by others, with her consent, and the contemporaneous but ineffectual attempt by her to relinquish her parental rights in a form allowed by law. It is said by the majority that the words of subsections (A), (B), and (C) permit this meaning. Believing that an involuntary termination of parental rights may not be based upon so trivial a ground, I would hold the three subsections unconstitutional, if given the meaning assigned to them by the majority.

There is a zone in family life which is protected by the Fourteenth Amendment to the Constitution of the United States, which amendment bars the State from interference save for reasons of supervening importance. *Santosky v. Kramer, supra; Smith v. Organization of Foster Families for Equality and Reform*, 431 U.S. 816, 97 S.Ct. 2094, 53 L.Ed.2d 14 (1977); *Stanley v. Illinois*, 405 U.S. 645, 92 S.Ct. 1208, 31 L.Ed.2d 551 (1972); *Prince v. Commonwealth of Massachusetts*, 321 U.S. 158, 64 S.Ct. 438, 88 L.Ed. 645 (1944). A child may be removed from the custody of his parents when his welfare or safety requires it.

exercise of her right of revocation, may not furnish the basis for an *involuntary* termination under § 15.02(1)(A), (B), or (C). To allow it to do so denies the very right of revocation which the Code so plainly recognizes, or extends the period of irrevocability beyond the 60 days allowed, for such conduct may be summoned forth at any future time and be claimed as a basis for involuntary termination. If such pa-

rental conduct may not be used as a basis for involuntary termination when there is executed a *valid* affidavit, it follows *a fortiori* that it may not be so used when the affidavit is *invalid*, for the parent's right of revocability is absolute in that case. The holding of the majority, in effect, is to deny the right of revocability in such cases.

*Stanley v. Illinois, supra*; Tex.Fam.Code §§ 15.01–15.07, 17.01–17.09. But when the State purports to intrude into the family life for the asserted purpose of protecting the welfare and safety of a child, it enters upon doubtful ground from a constitutional standpoint; hence, the basis claimed to justify the intrusion must be shown by clear and convincing evidence. *Santosky v. Kramer, supra; In re G.M.*, 596 S.W.2d 846 (Tex.1980). It may not reasonably be said that the welfare and safety of the child was, in the present case, exposed to harm by the actions of the appellant taken to accomplish his adoption by appellees.

The Legislature may not, in my view, allow involuntary termination of parental rights to be based upon so slight a ground as is shown by the evidence in this case. Some may, of course, abhor the idea that a mother would even think of surrendering her child to others. That she would act to that end would be even more repugnant to them, and they would tend to equate such conduct with "abuse" or "neglect," in at least an abstract sense. Any number of inter-family arrangements may technically fit, *in the abstract*, the terms of the three subsections. Refined sensibilities are enamored of abstractions, especially legal abstractions. I fear this has been the reaction of the majority. It is quite likely, however, that many who think along these lines have no appreciation of, or assign insufficient importance to, the plight of poverty-stricken families and the variety of formal and informal arrangements which often they are driven to make, with respect to their children, simply by force of circumstances. The poor, for example, resort in disproportionate numbers to foster care for their children. *Smith v. Organization of Foster Families, supra.* The evidence in the present case demonstrates the point. The conduct of a single mother, taken in response to her poverty, gives a meaning to the word "voluntarily" which is far different than the informed consent intended by subsections (A), (B), and (C) of § 15.02(1) of the Texas Family Code. More importantly for the point under discussion, her conduct ought not to be taken from its context,

infused with a significance which it does not have in reality, and be held in consequence to constitute a ground of substantial importance upon which the State may constitutionally sever her legal relationship with her child. The State should rather encourage a natural mother's renewed assertion of parental rights and a renewed commitment to her obligations when she has not validly relinquished the former and has not been shown to have abandoned, abused or neglected her child.

If subsections (A), (B), and (C) indeed have the meaning assigned to them by the majority, I would hold them unconstitutional under the Fourteenth Amendment because the ground for State action, allowable under the majority's expanded interpretation, is too slight in my view in comparison to the family interest protected by that amendment, as that interest has been described in, for example, *May v. Anderson*, 345 U.S. 528, 73 S.Ct. 840, 97 L.Ed. 1221 (1953); *Skinner v. Oklahoma*, 316 U.S. 535, 62 S.Ct. 1110, 86 L.Ed. 1655 (1942); and *Meyer v. Nebraska*, 262 U.S. 390, 43 S.Ct. 625, 67 L.Ed. 1042 (1923).

Moreover, I would hold each of the three relevant subsections unconstitutional on the additional ground that they are, being so interpreted, void for vagueness because they do not convey a sufficiently definite warning as to the range and quality of parental conduct which may result in termination of parental rights, as measured by common understanding and practices. *Jordan v. De George*, 341 U.S. 223, 71 S.Ct. 703, 95 L.Ed. 886 (1951); Annot., "Supreme Court's Application of Vagueness Doctrine to Noncriminal Statutes or Ordinances," 40 L.Ed.2d 823 (1975). That is particularly the result dictated here, for another statute, § 15.03, expressly provides for adoption with consent and voluntary relinquishment of parental rights, and the ordinary person would conclude that an ineffectual attempt to act under that statute would result in *no* legal consequences relative to her parental rights.

Finally, I would hold subsections (A), (B), and (C) unconstitutional for substantial

overbreadth as applied in the present case. The majority assign a meaning to these subsections which allows the termination of parental rights in circumstances where doing so, in my opinion, violates appellant's constitutional right of privacy. This right is not specifically expressed in the Constitution of the United States but is, nevertheless, founded upon the force and effect of the First, Third, Fourth, and Fifth Amendments to that Constitution, and is an aspect of the liberty which is protected against State action by the due process clause of the Fourteenth Amendment.

Appellant made the private decision to relinquish her parental rights and to consent to the adoption of her child by appellees, who are private parties. With no legal impediment to her doing so, she changed her mind before the adoption was consummated. These decisions by appellant, and her acts pursuant to those decisions, were private decisions and acts contrary to no law of the State of Texas, including no common law rule. No party suggests the State interest which has been put at risk by these decisions and acts. Nevertheless, the State's judicial system has been invoked in these intimate matters and its force has been allowed to coerce appellant into adhering to her original decision.

What is the State interest which justifies the use of its judicial machinery and sovereign force to accomplish the severance of parental rights in this dispute between private parties? The "best interests" of the child, standing alone, is an insufficient State interest. *Holley v. Adams, supra.* There is present in this case no State interest in making abused and neglected children eligible for adoption by terminating the rights of their natural parents, for abuse and neglect have been neither alleged nor proved. There is present no State interest in the enforcement of its statute which prescribes the formal requirements essential to the validity of instruments which purport to relinquish parental rights, for it is admitted in the case that the affidavit was legally insufficient. One would think the State's interest lay in the other direction, to be vindicated by enforcement of that statute.

Is abandonment of a child a sufficient State interest to support the judicial declaration that the parent's rights are at an end? Most certainly. This admittedly sufficient State interest is qualified, however, by the rule of the *Hendricks* case. That rule precludes application of the principle of abandonment to the facts of this case, if *stare decisis* has any meaning at all.

One must conclude that the majority hold in substance that subsections (A), (B), and (C) represent some vague new legal basis for the termination of parental rights, different from the principle of abandonment. They do not, however, define this new principle. One need not speculate in that regard, however, nor as to how such an undefined principle may be consistently applied in other cases, nor as to the unspecified outer limits of the three subsections as so interpreted. It is sufficient in my view to hold that whatever the principle is, and whatever the reach of the three subsections, they may not constitutionally be applied in the present case, for I find no State interest sufficient to support their application to the private decisions and acts shown in the record. Accordingly, I would hold the three subsections overbroad as applied in the present case, for they impinge unconstitutionally upon appellant's right of privacy in family matters, a right founded in large part upon the First Amendment. *Cleveland Board of Education v. LaFleur*, 414 U.S. 632, 94 S.Ct. 791, 39 L.Ed.2d 52 (1974); *Prince v. Commonwealth of Massachusetts*, 321 U.S. 158, 64 S.Ct. 438, 88 L.Ed. 645 (1944); *Pierce v. Society of Sisters*, 268 U.S. 510, 45 S.Ct. 571, 69 L.Ed. 1070 (1925).

The trial court's judgment does not purport to rest upon subsections (C) and (F) of Texas Family Code § 15.02(1). Nevertheless, appellees averred the factual proposition contained in subsection (C) and the trial court made findings of fact which support both subsections. Subsection (C) allows termination based upon proof that a parent voluntarily left his child in possession of another without providing adequate

support of the child, and remained away for a period of at least six months. Subsection (F) allows termination based upon proof that the parent simply failed to support his child in accordance with the parent's ability for a period of one year ending within six months of the date a petition for involuntary termination is filed.

Subsection (C) was not proved in the present case for the reasons pointed out in my discussion of subsections (A) and (B) above, applying the principle of *Hendricks v. Curry, supra.* It is plain that subsection (C) merely promulgates and specifies another ground from which one may draw the conclusion that the parent has abandoned his child by implication.

Subsection (F) was not proved in the present case, even if it were allowed to support the judgment despite appellees' failure to aver it as a ground for involuntary termination, because there is abundant evidence that before surrendering the child appellant arranged for the child to be cared for by others, when she herself was not caring for it; and, of course, it is admitted that appellees supported the child after obtaining possession of it with appellant's consent, with the implied agreement they would support it. The parent's duty of support is satisfied when she arranges for others to provide the support. *Heard v. Bauman, supra; Hendricks v. Curry, supra.* Moreover, subsection (F) was not proved for the reason that no identifiable and specific twelve month period, during which appellant is alleged to have failed to support the child, emerges from the record. *Wiley v. Spratlan,* 543 S.W.2d 349 (Tex.1976); *Cawley v. Allums,* 518 S.W.2d 790 (Tex.1975).

In consequence of all the foregoing, I would hold no evidence supports the trial court judgment, or, alternatively, that clear and convincing evidence does not survive a strict scrutiny of the record to support the trial court's findings of fact as to all the elements of any one of the factual propositions set forth in subsections (A), (B), (C), or (F) of the Texas Family Code, § 15.02(1). I would, accordingly, reverse the trial court judgment and render judgment that appel-lees take nothing by their suit; alternatively, I would render judgment remanding the cause for a new trial.