**Christina Blayne SWINNEY, Appellant,**

v.

**Steven Edward MOSHER and Deborah Ann Thomas Mosher, Appellees.**

**No. 2–91–198–CV.**

Court of Appeals of Texas, Fort Worth.

April 14, 1992.

Rehearing Overruled May 19, 1992.

---

West Texas Legal Services, Brett J. Wyatt, Fort Worth, for appellant.

Belker D. Paschall, III, Fort Worth, Cramb & Marling, L. Bradley Marling, Hurst, for Baby Girl Swinney.

Before FARRIS, MEYERS and DAY, JJ.

## OPINION

MEYERS, Justice.

This is a termination of parental rights case. Appellant, Christina Blayne Swinney, is the subject child's natural mother. Appellees, Steven Edward Mosher and Deborah Ann Thomas Mosher, petitioned the trial court for termination of appellant's parental rights and sought to adopt the child. The trial court entered a decree terminating Swinney's rights and appointing the Moshers as Joint Managing Conservators of the child.[1]

We reverse and render in part and remand in part.

In January of 1991, Swinney and the Moshers met and discussed the possibility of the Moshers adopting Swinney's baby. Swinney gave birth approximately one month later. On the afternoon after the birth, Ms. Swinney signed an affidavit of relinquishment of parental rights which named Steven Mosher and Deborah Mosher as managing conservators of her infant daughter, Heather Kaye Swinney. The next day, Ms. Swinney called the Moshers and told them that she had made a mistake and that she wanted Heather back; they then told her to "get a lawyer." Swinney appeared with her attorney at the judicial conference held approximately on the 11th of March and filed an answer and cross-petition. Eventually she obtained temporary orders which allowed her to visit Heather once a week until her rights were terminated by the trial court and she was ordered to have no contact with Heather.

A chronology of significant events reveals the following:

| | |
|---|---|
| 3 February 1991 | Christina Swinney gave birth to baby girl Swinney. |
| 4 February 1991 | Swinney signed an affidavit of relinquishment of parental rights which was irrevocable for sixty days and delivered the child to the Moshers. |
| 5 February 1991 | Swinney advised the Moshers that she had changed her mind about the adoption and wanted her child returned. |
| 8 February 1991 | The Moshers file an original petition for termination of parental rights. |
| 6 March 1991 | Attorney ad litem appointed to represent the interest of the child. |
| 11 March 1991 | Swinney files an original answer and cross-petition. Judicial conference held with attorneys of all parties. |
| 13 March 1991 | Temporary orders entered appointing Family Court Services as Temporary Managing Conservator, temporary cus- |

---

1. Bruce Chavez, the subject child's natural father, was also a respondent in the trial court. The trial court terminated his parental rights and he chose not to appeal.

tody to the Moshers and visitation to Swinney.

| | |
|---|---|
| 8 April 1991 | Swinney files a revocation of affidavit of relinquishment of parental rights. |
| 16 April 1991 | Swinney files a motion to dismiss. |
| 16 May 1991 | Trial court orally terminates Swinney's parental rights. |
| 4 June 1991 | Trial court signs and files decree terminating parental rights. |

---

 In order for the Moshers to adopt Heather, Swinney's parental rights must be terminated, either voluntarily or involuntarily. Under TEX.FAM.CODE ANN. § 15.-03(d) (Vernon 1986), an affidavit of relinquishment is revocable unless it expressly provides that it is irrevocable for a stated period of time not to exceed sixty days after the date of its execution. The affidavit signed by Swinney on February 4, 1991, contained a clause stating that it was irrevocable for a sixty-day period. After the sixty-day period had expired Swinney executed an affidavit of revocation of the affidavit of relinquishment of parental rights as per 15.03(d) of the Family Code, before the trial court had a hearing on termination of her parental rights. The trial court then improperly used section 15.02(1)(A) of the Family Code, which addresses parental actions taken outside the context of a parent's consent to adoption and an attendant voluntary relinquishment of parental rights, to terminate Swinney's parental rights.

 Swinney raises six points of error. In Swinney's second point of error she argues that there was no evidence that she expressed an "intent not to return" as required under TEX.FAM.CODE ANN. § 15.-02(1)(A) (Vernon Supp.1992). Specifically, Swinney argues that the evidence used by the court to terminate her rights under section 15.02 was the result of acts done in an effort to voluntarily relinquish her parental rights through an open adoption, and not evidence of abandonment. We agree.

The grounds for involuntary termination are set forth in section 15.02. The relevant portions of that statute read as follows:

A petition requesting termination of the parent-child relationship with respect to a parent who is not the petitioner may be granted if the court finds that:

(1) the parent has:

(A) voluntarily left the child alone or in the possession of another not the parent and expressed an intent not to return....

*Id.* We find that there is no evidence to support a finding that Swinney's parental rights could be properly terminated under this statute. The Moshers argue that the evidence of Swinney and Mosher leaving the hospital together with the baby on February 4, 1991, and Swinney handing Mosher the baby and acknowledging that it was her intent for the Moshers to adopt it, constitutes sufficient evidence to show that Swinney intended not to return. We disagree. All of these actions on the part of Swinney are consistent with her earlier decision to surrender Heather to the Moshers in contemplation of Heather's adoption by them. Swinney was not disregarding her parental obligations, as contemplated by 15.02(1)(A), but instead was attempting to affirmatively provide for Heather's welfare through others.

Clearly, section 15.03(d) contemplates that the affidavit of relinquishment of parental rights is revocable after the sixty-day period, it states in pertinent part:

(d) An affidavit of relinquishment of parental rights which designates as the managing conservator of the child the Texas Department of Human Services or an agency authorized by the Texas Department of Human Services to place children for adoption is irrevocable. *Any*

*other affidavit of relinquishment is re-vocable unless it expressly provides that it is irrevocable for a stated period of time not to exceed 60 days after the date of its execution.*

TEX.FAM.CODE ANN. § 15.03(d) (emphasis ours). Swinney properly revoked her affidavit after the sixty-day period and before her parental rights had been terminated by the trial court, if this section—which allows revocation—is to have any application at all it applies in the present case. Swinney changed her mind the next day, but because of the sixty-day irrevocable clause, was unable to revoke her affidavit until the sixty-day period had expired. Further, she obtained a lawyer (despite her inability to afford one), attended all the pretrial hearings and the trial, and obtained visitation rights and was visiting with the child up until her rights were terminated.

We could not possibly find that Swinney's actions, which were in accordance with her earlier decision to give Heather up for adoption, constitute evidence under the abandonment statute of the Family Code (15.02(1)(A)) to involuntarily terminate her parental rights. Such a finding would only serve to totally invalidate 15.03(d), which clearly gives parents in open adoption situations the right to revoke affidavits of relinquishment, because if the facts in this case do not come under 15.03(d), no facts will. There could be no conceivable situation where a parent who considers allowing her child to be adopted, and who executes an affidavit of relinquishment of parental rights would not "voluntarily" leave the child in the possession of another and express "an intent not to return," as the language is stated in the abandonment statute, 15.02(1)(A). Clearly, 15.02(1)(A) is not meant to apply in the present situation and a review of Texas common law before the enactment of the code confirms this interpretation.

Before the enactment of the Texas Family Code, the Supreme Court of Texas held that a finding of abandonment could not be based on a parent's written consent to adoption and delivery of possession of the child to the proposed adoptive parents. *Hendricks v. Curry,* 401 S.W.2d 796, 800

(Tex.1966). In *Hendricks,* the mother executed and delivered her written consent to the adoption of her child by others, to whom she delivered possession of the child. *Id.* at 798. When she withdrew her consent, as she was legally entitled to do, the adopting parents sued to obtain adoption of the child without her consent, alleging that she had abandoned the child by surrendering it to their possession and failing thereafter to support it herself, which are essential allegations in the present case. The trial court found the child had, indeed, been abandoned by the mother. The Supreme Court of Texas *disagreed,* saying:

The trial court's finding of abandonment is based upon the admitted fact that the mother gave up possession of her child and consented to its adoption. . . . We are thus left with the bare question of whether "abandonment" within the meaning of Article 2330 can be found as a fact from execution by a parent of a written consent to adoption and delivery of possession of the child to the proposed adoptive parents. We hold that it cannot.

It is settled law in this State that consent to adoption of a child, where required, can be withdrawn at any time before an adoption decree is entered. *Wilde v. Buchanan,* 157 Tex. 606, 305 S.W.2d 778 (1957); *Boyed v. Wilson,* Tex.Civ.App., 258 S.W.2d 223 (1953), writ refused. It follows that the acts of a parent in executing a consent to adoption and delivery of possession of a child pursuant thereto are done with the reserved legal right to withdraw consent at any time before entry of an adoption decree. With this legal right reserved, the parent does not "abandon" the child. A child is "abandoned" within the intent and meaning of Article 2330 when it is "deserted" by its parent or parents. One of the illustrations given by Webster's Third New International Dictionary of the meaning of the word "abandonment" is "desertion of a child by its parents." In the situation indicated, the child is not "deserted"; the acts are usually done, as they unquestionably were in this case,

for the purpose of better providing for the child's welfare. *See Guardianship of Baby Girl Rutherford,* 188 Cal.App.2d 202, 10 Cal.Rptr. 270, 98 A.L.R.2d 410 (1961). Article 46a, the adoption statute, requires parental consent to adoption except in certain circumstances. One of the circumstances in which consent is not required is where "a living parent or parents shall voluntarily abandon and desert a child." In that context "abandonment" was defined in *Strode v. Siverman,* Tex.Civ.App., 209 S.W.2d 415, 419 (1948), writ refused, n.r.e., in this language:

> "Voluntary abandonment, as used in the adoption statute, . . . is used more in a sense of a wilful act or course of conduct, and such as would imply a conscious disregard or indifference to such child in respect to the parental obligation that the parent owes to such child." [Deletion original.]

*See also Lee v. Purvin,* Tex.Civ.App., 285 S.W.2d 405, 408 (1956), writ refused, n.r.e. The definition is a sound one and should also be followed in determining whether a child is an "abandoned" child within the meaning of Article 2330. It is all too plain to permit of quibbling that the acts of Mrs. Hendricks in signing the written consent to adoption and in giving up possession of her child were not such acts "as would imply a conscious disregard or indifference to such child" in respect to the parental obligations she owed her child.

*Id.* at 800–01. It is all too plain in the present case that Swinney's execution of the affidavit of relinquishment of her parental rights and giving up possession of Heather were to facilitate her earlier agreement to give Heather up for adoption, and not evidence to show abandonment or an "intent not to return" as contemplated by TEX.FAM.CODE ANN. § 15.02(1)(A).

Additionally, prior to the enactment of 15.03(d) of the Family Code, the Texas Supreme Court held that a mother "had the unconditional right to withdraw her consent at any time before the court acted on the petition for adoption." *Wilde v. Buchanan,* 157 Tex. 606, 305 S.W.2d 778, 778 (1957) (per curiam) (citing *Boyed v. Wilson,* 258 S.W.2d 223 (Tex.Civ.App.—Galveston 1953, writ ref'd)). Thus, 15.03(d) was intended to be a codification of the already established principal that parental consent to adoption in the private adoption setting is revocable at any time before the court terminates the parent-child relationship. Clearly, in the present case, 15.03(d) applies to allow Swinney to revoke after the sixty-day irrevocability clause has expired and before her parental rights were terminated.

Furthermore, 15.02(1)(A) was not enacted as a way to subvert this well-established common law. Rather, subsection (A) of the Texas Family Code section 15.02(1) supplants the part of former article 2330 "which provided that a child could be declared dependent or neglected, if 'abandoned' by his parents." Smith, *Commentary, Texas Family Code Symposium,* 5 TEX.TECH.L.REV. 439 (1974). As already discussed, the Texas Supreme Court held in *Hendricks* that "abandonment" within the meaning of article 2330 could not be found from the execution by a parent of a written consent to adoption and delivery of possession of the child to the proposed adoptive parents. *Hendricks,* 401 S.W.2d at 800. The court went on the clarify that a child is "abandoned" within the meaning of article 2330 when it is "deserted" by its parent. *Id.* Furthermore, subsection (A) was designed to clearly define "abandonment" and to be sufficiently specific so that any constitutional question based upon vagueness was removed. Smith, *Commentary, Texas Family Code Symposium,* 5 TEX. TECH L.REV. 439–40. The court in *Hendricks* referred to the common law definition of "voluntary abandonment" in the adoption statute as used in the sense of a "wilful act or course of conduct, and such as would imply a conscious disregard or indifference to such child in respect to the parental obligation that the parent owes to such child." *Hendricks,* 401 S.W.2d at 801. In an open adoption situation as in the present case, the parent is not disregarding parental obligations as contemplated by 15.02(1)(A), but is instead attempting to

affirmatively provide for the child's welfare through others.

To hold that the actions by a parent which were consistent with an open adoption, could come under the "abandonment" requirements of 15.02(1)(A) for an involuntary termination, would cause that statute to be unconstitutionally overbroad and a violation of the fourteenth amendment.[2]

■ The Moshers concede that the affidavit standing alone does not meet the standard of clear and convincing evidence of intent not to return, but that intent not to return can be inferred from it coupled with facts and circumstances. They cite *Smith v. McLin* and *Diaz v. Beyer* to support this proposition. *Smith v. McLin*, 632 S.W.2d 390 (Tex.App.—Austin 1982, writ ref. n.r.e.); *Diaz v. Beyer*, 611 S.W.2d 726 (Tex.Civ.App.—Waco 1981, writ ref'd n.r.e.), *cert. denied*, 456 U.S. 904, 102 S.Ct. 1749, 72 L.Ed.2d 160 (1982). These cases are easily distinguishable from the present case.

In *Diaz*, the court found it important that neither of the parents made any effort to see the child, or attend the initial hearing on temporary injunction. *Diaz*, 611 S.W.2d at 730. In *Smith*, the court relied on *Diaz* stating that "a revoked affidavit of relinquishment coupled with no attempts to see the subject child was considered to be clear and convincing evidence that the parent 'voluntarily left the child in the possession of another not the parent and expressed an intent not to return.'" *Smith*, 632 S.W.2d at 392 (citing *Diaz*, 611 S.W.2d at 731). Additionally, the facts in *Smith* are that the mother left the child in the care of the adoptive parents for a period of three years. *Id.* Thus, even if it is the law in Texas that sections 15.03 and 15.02(1)(K) can be subverted, the facts in Swinney's case are clearly distinguishable where she obtained a lawyer, attended all pretrial hearings and the trial, and sought and received temporary orders for visitation once a week up until her parental rights were terminated.

■ In determining a "no evidence" point, we are to consider only the evidence and inferences which tend to support the finding of the trier of fact and disregard all evidence and inferences to the contrary. *See Sherman v. First Nat'l Bank*, 760 S.W.2d 240, 242 (Tex.1988) (per curiam); *Larson v. Cook Consultants, Inc.*, 690 S.W.2d 567, 568 (Tex.1985); *In re King's Estate*, 150 Tex. 662, 244 S.W.2d 660, 661–62 (1951) (per curiam). If there is any evidence of probative force to support the finding of the judge, the point must be overruled and the finding upheld. *In re King's Estate*, 244 S.W.2d at 661–62.

■ A "no evidence" point of error must and may only be sustained when the record discloses one of the following: (1) a complete absence of evidence of a vital fact; (2) the court is barred by rules of law or evidence from giving weight to the only evidence offered to prove a vital fact; (3) the evidence offered to prove a vital fact is no more than a scintilla of evidence; or (4) the evidence establishes conclusively the opposite of a vital fact. *Commonwealth Lloyd's Ins. Co. v. Thomas*, 678 S.W.2d 278, 288 (Tex.App.—Fort Worth 1984, writ ref'd n.r.e.); Calvert, *"No Evidence" and "Insufficient Evidence" Points of Error*, 38 TEX.L.REV. 361 (1960).

■ The facts in an involuntary parent-child termination proceeding must be proved by the "clear and convincing evidence" standard. *Diaz*, 611 S.W.2d at 729; *In Interest of G.M.*, 596 S.W.2d 846, 847 (Tex.1980). Clear and convincing evidence is defined as that measure of degree of proof which will produce in the mind of the trier of fact a firm belief or conviction as to the truth of the allegations sought to be established. *State v. Addington*, 588 S.W.2d 569, 570 (Tex.1979) (per curiam). This is an intermediate standard, falling between the preponderance standard of ordinary civil proceedings and the reasonable doubt standard of criminal proceedings. *Id.* While the proof must weigh heavier

---

2. For an excellent discussion on the constitutionality of TEX.FAM.CODE ANN. § 15.02(1)(A), (B) & (C), *see* Justice Powers' dissent in *Smith v.*

*McLin*, 632 S.W.2d 390, 394 (Tex.App.—Austin 1982, writ ref'd n.r.e.).

than merely the greater weight of the credible evidence, there is no requirement that the evidence be unequivocal or undisputed. *Id.*

In the present case, there is a complete absence of any evidence that Swinney abandoned Heather as contemplated by TEX.FAM.CODE ANN. § 15.02(1)(A). Swinney's actions of surrendering possession of Heather and execution of the affidavit relinquishing her parental rights were done in contemplation of her adoption by the Moshers, not with an intent to abandon Heather. Also, there is a complete absence of any evidence that Swinney expressed "an intent not to return" as that language was intended to be applied by the legislature. Swinney's actions were done in furtherance of her original agreement to allow the Moshers to adopt Heather, which under 15.03(d) Swinney had a right to revoke. Swinney's prompt notice to the Moshers of her intent to revoke the affidavit coupled with her prompt retention of a lawyer, her attendance at all hearings concerning her termination, and her weekly visitation of Heather, when it was permitted, establishes conclusively that Swinney did not intend to abandon Heather under 15.02(1)(A). Any finding to the contrary would render section 15.03(d) of the Family Code null and void.

■ Even when blood relationships are strained, parents retain a vital interest in preventing the irretrievable destruction of their family life. *Santosky v. Kramer,* 455 U.S. 745, 102 S.Ct. 1388, 71 L.Ed.2d 599 (1982). If anything, persons faced with forced dissolution of their parental rights have a more critical need for procedural protections than do those resisting state interventions into ongoing family affairs. *Id.* at 753, 102 S.Ct. at 1395, 71 L.Ed.2d at 606. It is "plain beyond the need for multiple citation" that a natural parent's "desire for and right to 'the companionship, care, custody and management of his or her children'" is an interest far more precious than a property right. *Lassiter v. Department of Soc. Serv.,* 452 U.S. 18, 27, 101 S.Ct. 2153, 2159–60, 68 L.Ed.2d 640 (1981) (quoting *Stanley v. Illinois,* 405 U.S. 645,

651, 92 S.Ct. 1208, 1212, 31 L.Ed.2d 551, 558 (1972)).

A finding that parental rights could be involuntarily terminated based on the actions consistent with an open adoption would be contrary to the history of Texas law prior to the Family Code and a subversion of the legislatures' intent in 15.03(d) and 15.02(1)(A). Swinney's second point of error is sustained.

■ Under TEX.R.APP.P. 80(b) and 81(b), when we sustain a "no evidence" point, it is our duty to render judgment for the appellant because that is the judgment the trial court should have rendered. *See Vista Chevrolet v. Lewis,* 709 S.W.2d 176 (Tex. 1986) (per curiam); *National Life & Accident Ins. Co. v. Blagg,* 438 S.W.2d 905, 909 (Tex.1969).

■ Ordinarily, having concluded there is no evidence to support the judgment of the trial court, we would not evaluate the sufficiency of the evidence. *See Havner v. E–Z Mart Stores, Inc.,* 825 S.W.2d 456 (1992). However, because the custody of a young child is involved in this matter and we believe further delay in a final determination of this appeal is contrary to the child's best interest, we conclude that we should address all points of error at this time.

We recognize that *Diaz,* 611 S.W.2d 726 and *Smith,* 632 S.W.2d 390 considered the affidavit of relinquishment and delivery of the child to the adoptive parents as some evidence to support termination of parental rights under section 15.02(1)(A). In the event that we have erred in our determination that these cases are not controlling on our disposition of the "no evidence" point of error, we proceed to examine the sufficiency of the evidence, as advanced in Swinney's third point of error.

■ An assertion that the evidence is "insufficient" to support a finding of fact can mean that the evidence supporting the finding is so weak or the evidence to the contrary is so overwhelming that the finding should be set aside and a new trial ordered. *Garza v. Alviar,* 395 S.W.2d 821, 823 (Tex.1965). We are required to consid-

er all of the evidence in the case in making this determination.

Once again, the court must use the clear and convincing evidence standard which is higher than the preponderance of the evidence standard and lower than the reasonable doubt standard. *In Interest of G.M.*, 596 S.W.2d at 847.

In the present case, the evidence is also insufficient to support a finding that Swinney abandoned Heather under 15.-02(1)(A) and expressed an "intent not to return." Deborah Mosher testified that this was to be an open adoption and that she and Swinney discussed the possibility of Swinney attending Heather's birthday parties and seeing Heather whenever Swinney wanted. Furthermore, the night Swinney gave birth to Heather, she contacted the Moshers to inquire about Heather, and inform them that she did not feel good about the situation. Swinney then contacted the Moshers several times within the next couple of days to tell them she had changed her mind. The evidence that Swinney called the Moshers and told them to come pick Heather up from the hospital, and that she handed the baby to Deborah Mosher was consistent with her earlier decision to allow the Moshers to adopt Heather, not clear and convincing evidence that she expressed an intent not to return. Swinney's actions were done in furtherance of her original agreement to allow the Moshers to adopt Heather, which under 15.03(d) Swinney had a right to revoke. Swinney's phone call to the Moshers hours after the child's birth inquiring about her health, her subsequent revocation of the affidavit coupled with her prompt retention of a lawyer, her attendance at all hearings concerning her termination, and her weekly visitation of Heather when it was permitted, is overwhelming evidence against any finding that Swinney expressed "an intent not to return." A holding to the contrary would render section 15.03(d) of the Family Code null and void.

In *Smith*, the court states that it and *Diaz* both hold that an affidavit of relinquishment coupled with no attempt to see the subject child was clear and convincing evidence that the parent voluntarily left the child in the possession of another not the parent and expressed an intent not to return. *Smith*, 632 S.W.2d at 392 (citing *Diaz*, 611 S.W.2d at 731). As discussed in the earlier point, the evidence in the present case is insufficient to meet the clear and convincing standard. Swinney contacted the Moshers the night she gave Heather to them for the adoption. In *Diaz* and *Smith* the parents had no contact with the children for three months and three years, respectively. Swinney's facts clearly are not sufficient to show clear and convincing evidence of an intent not to return where she contacted the Moshers that evening, obtained a lawyer, attended all pretrial hearings and trial, and had visitation with the child up until her rights were terminated. Swinney's third point of error is sustained.

In her first point, Swinney argues that because she revoked her affidavit before the Moshers amended their pleadings to include 15.02(1)(A), the court was without subject matter jurisdiction when it terminated her rights. We disagree. The ad litem appointed to represent the child's rights filed his petition on March 27, 1991, before Swinney filled her revocation, and the ad litem's original answer set forth the statutory ground of TEX.FAM.CODE ANN. § 15.02(1)(A). Thus, the issue was properly before the court, and Swinney was on notice the court was considering this ground for termination. TEX.R.CIV.P. 45(b). Swinney's first point of error is overruled.

In her fourth and fifth points, Swinney argues that TEX.FAM.CODE ANN. § 15.02(1)(A) is unconstitutional under the state and federal constitutions because it is overbroad, vague, and a denial of substantive due process, and that the trial court's allowing the petitioners to amend their pleadings was a violation of her procedural due process rights. Swinney presents these arguments for the first time on appeal. In order to preserve a complaint for appellate review, a party must have presented to the trial court a timely request, objection or motion, stating the specific grounds for the ruling he desired the

court to make. Tex.R.App.P. 52(a). Swinney has waived review of these arguments, her fourth and fifth points of error are overruled.

In her last point, Swinney argues that there was no evidence or insufficient evidence to support the award of attorney's fees. The trial court awarded the attorney ad litem twenty-six thousand dollars in attorney's fees. In light of our opinion altering the judgment of the trial court, the question of attorney ad litem's fees is remanded to the trial court for reconsideration. Swinney's sixth point of error is sustained.

Bruce Chavez, the subject child's natural father, did not appeal the judgment terminating his parental rights. As a general rule, when one party appeals from a judgment, a reversal on her behalf will not justify a reversal as to other nonappealing parties. This rule does not, however, apply where the respective rights of the appealing and nonappealing parties are so interwoven and dependent on each other as to require a reversal of the entire judgment. *Turner, Collie & Braden v. Brookhollow, Inc.*, 642 S.W.2d 160, 166 (Tex.1982). In such a case, the court must reverse the entire judgment in order to provide the appellant with the full and effective relief. *Id.*

Chavez's termination was done to facilitate Heather's adoption by the Moshers. Because we find that Swinney properly revoked her relinquishment of parental rights and there was no evidence or alternatively insufficient evidence for involuntary termination, the adoption of Heather by the Moshers will not proceed. Thus, Chavez's termination is neither necessary nor desirable. And further, his termination would prejudice the rights of Heather and Swinney to receive support. Swinney's and Chavez's parental rights in reference to Heather and her best interests are so interwoven and dependent on each other as to require a reversal of the entire judgment. In order to provide full and effective relief and for the best interest of the child, we reverse the trial court's judgment terminating Chavez's parental rights.

The judgment terminating Swinney's and Chavez's parental rights is reversed and rendered, costs of appeal are taxed against appellees, and the cause is remanded to the trial court for determination of conservatorship of the child and attorney ad litem fees through trial.