GUARDIANSHIP OF ZEKE.

Barnstable. January 10, 1996. - April 10, 1996.

Present: LIACOS, C.J., ABRAMS, LYNCH, O'CONNOR, & FRIED, JJ.

*Massachusetts Child Custody Jurisdiction Act. Parent and Child,* Custody. *Jurisdiction,* Custody of child. *Statute,* Construction. *Words,* "Home state," "Immediately."

A Probate Court judge incorrectly acted to exercise jurisdiction over the custody of a child under G. L. c. 209B by appointing a temporary guardian, where, on the record before the judge, Texas and not Massachusetts was the child's home State for purposes of § 2 (*a*) (1) and (2) of the statute [441-444], and where the child had not been "abandoned" so that jurisdiction could be found under § 2 (*a*) (3) [444-445].

PETITION filed in the Barnstable Division of the Probate and Family Court Department on June 27, 1994.

The case was heard by *Robert E. Terry,* J.

The Supreme Judicial Court granted an application for direct appellate review.

*Lynne Alix Morrison* for the father.

*Bruce P. Gilmore* for the aunt.

ABRAMS, J. This is an interjurisdictional custody dispute over a child whom we shall call Zeke. The Barnstable Probate and Family Court (Massachusetts court) exercised jurisdiction over the custody of Zeke by issuing an order, dated June 27, 1994, appointing the child's maternal aunt (aunt) as temporary guardian. On July 1, 1994, Zeke's biological father (father) filed a motion to vacate temporary guardianship and enforce the order of a Texas court, contending that the Massachusetts court lacked subject matter jurisdiction. Subsequently, the judge entered an order appointing an attorney for Zeke, thereby continuing to exercise jurisdiction over Zeke's custody. The father filed a petition for relief pursuant

to G. L. c. 231, § 118, first par. (1994 ed.),[1] and a motion for a stay. A single justice of the Appeals Court denied the father's petition for relief. On September 8, 1994, the probate judge denied the father's motion to vacate, reasoning that his exercise of jurisdiction was proper because Zeke was physically present in Massachusetts and had been abandoned. See G. L. c. 209B, § 2 (*a*) (3) (1994 ed.). The judge also reasoned that no other State could exercise home State jurisdiction over Zeke and that it was in Zeke's best interests for a Massachusetts court to assume jurisdiction. See G. L. c. 209B, § 2 (*a*) (2) (1994 ed.).

On January 27, 1995, the judge issued findings of fact and judgment awarding permanent guardianship to the aunt.[2] Conclusions of law followed on February 16, 1995. The father appealed, alleging that the Massachusetts court lacked subject matter jurisdiction to enter a judgment and alternatively that the court committed an error of law in concluding that the father was unfit to parent Zeke. We allowed the father's application for direct appellate review. We conclude that Massachusetts courts lack subject matter jurisdiction over the custody of Zeke and must defer to the Texas courts.

I. *Facts.* The judge found the following facts. Zeke was born on July, 29, 1982. In 1983, Zeke's parents were divorced by a judgment of divorce from a Texas court. The Texas court granted the mother custody of Zeke and ordered the father to pay child support. For the next ten years, the father had very little interaction with Zeke and paid almost no child support. By June, 1988, he was approximately $22,000 in arrears on his child support obligation.

In April, 1989, the father executed an affidavit of relinquish-

[1]General Laws c. 231, § 118, first par. (1994 ed.), provides: "A party aggrieved by an interlocutory order of a trial court justice in the superior court department, the housing court department, the land court department or the probate and family court department may file, within thirty days of the entry of such order, a petition in the appropriate appellate court seeking relief from such order. A single justice of the appellate court may, in his discretion, grant the same relief as an appellate court is authorized to grant pending an appeal under section one hundred and seventeen."

[2]The judge determined that the father was "unfit by clear and convincing evidence to serve as custodian of [Zeke]." This decision was based in part on findings that the father would not personally provide emotional or financial support to Zeke if awarded custody, in part on Zeke's expressed desire to live in Massachusetts, and in part on the success of the aunt's guardianship.

ment of parental rights over Zeke which was filed in the District Court of Denton County, Texas. The affidavit, by its terms, was revocable after sixty days if parental rights had not been terminated. The relinquishment of parental rights was executed in part to free Zeke for adoption by the mother's second husband and in part in exchange for a waiver of the father's child support obligation. The contemplated adoption by the mother's second husband never took place and no order was entered terminating the father's parental rights. On July 1, 1994 (three days after the Massachusetts court exercised jurisdiction over the guardianship of Zeke), the father revoked his relinquishment of parental rights.

On June 9, 1994, the mother and her four children (including Zeke) were involved in an automobile accident in Texas of which Zeke was the sole survivor. Prior to the accident, the mother had executed a will appointing the aunt, her sister, as successor guardian of Zeke.[3] Zeke was seriously injured and remained hospitalized for approximately one week following the accident. On June 17, 1994, he was released from the hospital. On June 25, 1994, Zeke's minister sent Zeke to Massachusetts to be with his aunt. The father, who now lives in Michigan, visited Zeke for the first time in ten years while Zeke was recovering following the accident.

On Friday, June 24, 1994, the father obtained a writ of habeas corpus from the District Court of Denton County, Texas (Texas court) directed to the minister to bring Zeke before the Texas court. The writ was not served on the minister until after Zeke had been sent to his aunt in Massachusetts. On June 27, 1994, the Texas court issued a revised writ.[4] On the same day and prior to being served in the Texas proceeding, the aunt obtained an order from the Massachusetts court

---

[3]The mother's second husband was named first guardian. This nomination was revoked in 1992 by the mother's divorce from the second husband.

[4]The order read as follows: "The verified Amended Application of Relator [the father] for Writ of Habeas Corpus and Writ of Attachment regarding the person of [Zeke], a minor Child, was presented to the Court. The Court finds it has jurisdiction of this cause, that Respondent [the minister] is no longer in possession of nor detaining the Child, that Respondent [the aunt] is in possession of and detaining the Child, and that a Writ of Attachment for the body of the Child should forthwith issue.

"Therefore, it is ORDERED that the Clerk of this Court forthwith issue a Writ of Attachment commanding any Sheriff or Constable to take the body of [Zeke], a Child, and to deliver the Child safely to this Court during

appointing her temporary guardian of Zeke's person. See G. L. c. 201, § 1 (1994 ed.).

II. *Subject matter jurisdiction under G. L. c. 209B (1994 ed.).*[5] To determine whether the judge's exercise of jurisdiction was proper, we look to the Massachusetts Child Custody Jurisdiction Act (MCCJA). See G. L. c. 209B. "The decision of a Massachusetts court to exercise jurisdiction and to make a custody determination must be based solely on G. L. c. 209B." *Redding* v. *Redding,* 398 Mass. 102, 106 (1986). Jurisdiction must be exercised pursuant to any of the four subsections of G. L. c. 209B, § 2 (a). *Id.*

a. *G. L. c. 209B, § 2 (a) (1).* General Laws c. 209B, § 2 (a) (1), provides that "[a]ny court which is competent to decide child custody matters has jurisdiction to make a custody determination by initial or modification judgment if: (1) the commonwealth (i) is the home state of the child on the commencement of the custody proceeding, or (ii) had been the child's home state within six months before the date of the commencement of the proceeding and the child is absent from the commonwealth because of his or her removal or retention by a person claiming his or her custody or for other reasons, and a parent or person acting as parent continues to reside in the commonwealth."

"Home state" is defined in G. L. c. 209B, § 1, as "the state in which the child immediately preceding the date of commencement of the custody proceeding resided with his parents, a parent, or a person acting as parent, for at least 6 consecutive months . . . . Periods of temporary absence of any of the named persons are counted as part of the 6-month or other period." Zeke had been in Massachusetts for only

regular Court hours, at which time and place a hearing shall be had to determine the right to possession of the Child.

"It is FURTHER ORDERED that the Clerk of this Court issue notice to Respondent [aunt] of the time and place of the hearing when set."

[5]Contrary to the aunt's suggestion, we need not first decide whether the father has standing in order to determine whether the Massachusetts court properly exercised subject matter jurisdiction. See *Prudential-Bache Sec., Inc.* v. *Commissioner of Revenue,* 412 Mass. 243, 249 (1992) (case properly before appellate court regardless of plaintiff's standing because obvious conflict remains). The aunt's argument as to whether the father had standing under Texas law to seek a writ of habeas corpus and writ of attachment prior to the revocation of his relinquishment of parental rights is an issue for the Texas court.

two days prior to the initiation of the temporary guardianship proceeding here. On the record before us, there was no evidence that Zeke had ever visited Massachusetts prior to that time. Therefore, Massachusetts was not and had not been Zeke's home State within six months from the time the Massachusetts court exercised jurisdiction. Jurisdiction was not proper under § 2 (*a*) (1).

b. *G. L. c. 209B, § 2 (a) (2)*. Contrary to the finding of the Probate Court judge, jurisdiction also was not proper under § 2 (*a*) (2). Section 2 (*a*) (2) provides a basis for jurisdiction if "it appears that no other state would have jurisdiction under paragraph (1) and it is in the best interest of the child that a court of the commonwealth assume jurisdiction because (i) the child and his or her parents, or the child and at least one contestant, have a significant connection with the commonwealth, and (ii) there is available in the commonwealth substantial evidence concerning the child's present or future care, protection, training, and personal relationships." It is required both that no other State have home State jurisdiction and that it be in the child's best interest that Massachusetts assume jurisdiction.

The judge concluded that Texas was no longer Zeke's home State because he had not lived with a parent in Texas "immediately" prior to the Massachusetts court's exercise of jurisdiction. The court defined "immediately" to foreclose Texas's exercise of home State jurisdiction because Zeke had not lived in Texas with a parent or person acting as a parent for the sixteen days between his mother's death on June 9, 1994, and his removal to Massachusetts on June 25, 1994.[6] The judge found that any connection between Zeke and Texas was broken by the mother's death. The father argues that it defies common sense and the policy underlying the MCCJA to construe "immediately" so narrowly. We agree. "The word 'immediately' like most other words, has no inflexible import. It has a relative signification. It must be interpreted in connection with its context and all attendant conditions." *Dana* v. *Wildey Sav. Bank*, 294 Mass. 462, 465 (1936). See *Watros* v. *Greater Lynn Mental Health & Retardation Ass'n, Inc.*, 421

---

[6]During this time, Zeke was first in the hospital and then apparently in the temporary custody of his minister in Texas. Neither the hospital nor the minister is a person acting as a parent under the definition in G. L. c. 209B, § 1 (1994 ed.).

Mass. 106, 113 (1995) ("a strictly literal reading of a statute should not be adopted if the result will be to thwart or hamper the accomplishment of the statute's obvious purpose, and if another construction which would avoid this undesirable result is possible"). We decline to adopt a literal reading of "immediately" because to do so would violate the purposes of the MCCJA.

We construe "immediately" in conjunction with the second sentence of the definition of home State to allow for continuing jurisdiction in a situation when a parent has been absent from the State for a brief period but the child continued to reside in the State in the parent's absence. We conclude that the sixteen-day period during which Zeke was living in Texas but not with a parent or person acting as a parent did not deprive Texas of home State jurisdiction. See *Geary* v. *Peavy*, 878 S.W.2d 602, 604 (Tex. 1994) (Minnesota remains children's home State and retains jurisdiction after death of parent). Texas was Zeke's home State at the time of the initiation of the guardianship proceeding in Massachusetts[7] and thus, the exercise of jurisdiction by the Massachusetts court under § 2 (*a*) (2) was improper.[8]

Because we conclude that Texas was Zeke's home State and that exercise of jurisdiction by the Massachusetts court was improper for that reason, we do not reach whether it is in the best interest of Zeke that Massachusetts courts exercise jurisdiction. The determination of Zeke's best interests must be made by the Texas court if it decides to exercise custody jurisdiction over Zeke.

Under the Texas Family Code Child Custody Jurisdiction

[7]Physical presence of the child in the State at the time of the initiation of suit is not a prerequisite for home State jurisdiction. See Tex. Fam. Code Ann. § 152.003 (c) (West 1996) ("[p]hysical presence of the child, while desirable, is not a prerequisite for jurisdiction to determine the child's custody"). See also G. L. c. 209B, § (2) (*c*) (1994 ed.).

[8]Exercise of jurisdiction under § 2 (*a*) (4) similarly would be improper as Texas had home State jurisdiction and has not thus far declined to exercise jurisdiction on the ground that the Commonwealth is the more appropriate forum to determine the custody of Zeke. See G. L. c. 209B, § 2 (*a*) (4) (1994 ed.) (Massachusetts court may exercise jurisdiction if "another state has declined to exercise jurisdiction on the ground that the commonwealth is the more appropriate forum to determine the custody of the child, and . . . it is in the best interest of the child that a court of the commonwealth assume jurisdiction").

Act (TCCJA), Texas may decline jurisdiction in favor of a Massachusetts court if it determines that Texas is an inconvenient forum to make a custody determination in the circumstances of the case and that a Massachusetts court is a more appropriate forum. See Tex. Fam. Code Ann. § 152.007 (West 1996).[9] See also *Haley* v. *Haley*, 713 S.W.2d 801 (Tex. Ct. App. 1986). The factors for consideration include (1) whether Massachusetts is now the child's home State; (2) whether Massachusetts has a closer connection with the child and the child's family or with the child and one or more of the contestants; and (3) whether substantial evidence concerning the child's present or future care, protection, training, and personal relationships is more readily available in Massachusetts. Tex. Fam. Code Ann. § 152.007 (c). Texas could, therefore, decline to exercise jurisdiction because none of the parties currently resides in Texas, Zeke has not resided in Texas for almost two years. Further, Texas could consider that the father has not lived in Texas for over ten years. The decision whether to exercise or decline jurisdiction is left to the discretion of the Texas court.[10]

c. *G. L. c. 209B, § 2 (a) (3)*. The Massachusetts court alternatively based its exercise of jurisdiction on a finding that Zeke had been abandoned in Texas. See G. L. c. 209B, § 2 (*a*) (3) ("[a]ny court which is competent to decide child custody matters has jurisdiction to make a custody determination by initial or modification judgment if: . . . [3] the child is physically present in the commonwealth and . . . the child has been abandoned . . ."). The court's finding of jurisdiction under this prong of § 2 (*a*) was erroneous. Under Massachusetts law, physical relinquishment of a child to the care of the other parent does not constitute legal abandonment and is not reason to deny custody to a natural parent. See G. L. c. 273, § 1 (1994 ed.) (guilty of criminal abandonment if child left *without* making reasonable provisions for support of child); *Guardianship of a Minor*, 19 Mass. App.

[9]A Texas judge may communicate with the Massachusetts probate judge in making this decision. See G. L. c. 209B, § 7 (*c*) (1994 ed.); Tex. Fam. Code Ann. § 152.007 (d) (West 1996).

[10]We note that if Texas exercises jurisdiction, Zeke's preference as to custody will be given considerable weight. See Tex. Fam. Code Ann. § 153.008 (West 1996) ("If the child is 12 years of age or older, the child may, by writing filed with the court, choose the managing conservator, subject to the approval of the court").

Ct. 333, 337 (1985) (lack of contact with child is not conclusive factor in determining whether biological parent should have custody).

Neither does voluntary relinquishment of parental rights constitute abandonment under Texas law. *Swinney* v. *Mosher*, 830 S.W.2d 187, 191-192 (Tex. Ct. App. 1992) (natural parent's voluntary relinquishment of parental rights done in effort to provide for child's welfare through facilitating her adoption does not constitute abandonment within meaning of Texas Family Code); *Huffstutlar* v. *Koons*, 789 S.W.2d 707, 713 (Tex. Ct. App. 1990).

The father has revoked the voluntary relinquishment of his parental rights. He has not legally abandoned Zeke. He retains the status of parent until his rights are either voluntarily or involuntarily terminated. See G. L. c. 209B, § 1 ("[p]arent" defined as "a biological, foster, or adoptive parent whose parental rights have not previously been terminated"); Tex. Fam. Code Ann. § 101.024 (West 1996) ("parent" defined as "the mother, a man presumed to be the biological father or who has been adjudicated to be the biological father by a court of competent jurisdiction, or an adoptive mother or father. The term does not include a parent as to whom the parent-child relationship has been terminated"). The judge's exercise of subject matter jurisdiction under G. L. c. 209B, § 2 (*a*) (3), was improper.

d. *G. L. c. 209B, § 2 (d) (1994 ed.)*. The father argues that Massachusetts is prohibited from exercising jurisdiction over the custody of Zeke by G. L. c. 209B, § 2 (*d*) (1994 ed.).[11] Because we have concluded that Massachusetts courts do not have jurisdiction under § 2 (*a*), we do not reach whether, in these circumstances, Massachusetts courts would be prohibited by § 2 (*d*) from exercising jurisdiction that was otherwise proper under § 2 (*a*). We note, however, that under Texas law, a habeas corpus proceeding is not a proceeding "for the

---

[11]General Laws c. 209B, § 2 (*d*) (1994 ed.), provides: "A court of the commonwealth shall not exercise jurisdiction in any custody proceeding commenced during the pendency of a proceeding in a court of another state where such court of that state is exercising jurisdiction consistently with the provisions of this section for the purpose of making a custody determination, except in accordance with paragraph (3) of subsection (*a*), unless the court of the other state shall decline jurisdiction pursuant to paragraph (4) of subsection (*a*) or shall stay its proceedings or otherwise defer to the jurisdiction of a court of the commonwealth."

purpose of making a custody determination," as that term is used in G. L. c. 209B, § 2 (*d*). *Greene* v. *Schuble*, 654 S.W.2d 436, 438 (Tex. 1983) ("The office of habeas corpus is limited to restoring possession of the children to the person legally entitled to present possession, and may not be used to relitigate custody"); *Trevino* v. *Garcia*, 627 S.W.2d 147, 149 (Tex. 1982) ("A habeas corpus proceeding will not be used to determine custody of a child"); *Perry* v. *Scoggins*, 626 S.W.2d 302, 303 (Tex. 1981) ("The habeas corpus proceeding did not give the El Paso court jurisdiction over a custody determination of this child, because a habeas corpus proceeding is not a 'suit affecting the parent-child relationship'"); *Garza* v. *Schilling*, 576 S.W.2d 147, 149 (Tex. Ct. App. 1978) ("[§] 14.10 of the Family Code overruled the prior case law which previously permitted a habeas corpus proceeding to put the right of custody in issue"); *Trader* v. *Dear*, 565 S.W.2d 233 (Tex. 1978) (same).

III. *Conclusion.* At the time the guardianship proceeding commenced, the Massachusetts court lacked jurisdiction to determine custody of Zeke. We reverse the denial of the father's motion to vacate temporary guardianship and enforce the order of the Texas court. We remand to the Probate and Family Court with instructions to vacate the judgment of permanent guardianship and dismiss the proceedings.[12] We further instruct the Probate and Family Court judge to order the aunt and the child to comply with any order of the Texas court. See G. L. c. 209B, § 11 (*b*) (1994 ed.). Unless Texas declines to exercise jurisdiction over the custody of Zeke, Massachusetts courts must defer to Texas.

*So ordered.*

---

[12]On this holding, we need not decide whether the Probate Court judge committed error in concluding that the father currently is unfit to parent Zeke. Our decision does not address the merits of the custody dispute. See *Custody of a Minor (No. 3)*, 392 Mass. 728, 734 (1984) ("Chapter 209B concerns procedural, and not substantive, requirements"). The determination on the merits must be made by a Texas court. Under Texas law, a finding of parental unfitness need not precede an award of custody to a nonparent. *De La Hoya* v. *Saldivar*, 513 S.W.2d 259 (Tex. Ct. App. 1974) (it is not the law in Texas that between a parent and nonparent, both fit and proper custodians, that the court must award custody to the parent); *Duckworth* v. *Thompson*, 37 S.W.2d 731 (Tex. Comm'n App. 1931).