**Dennis CORNELISON, et ux., Appellants,**

v.

**Rana Zoe NEWBURY, Appellee.**

**No. 10–96–111–CV.**

Court of Appeals of Texas,
Waco.

Oct. 25, 1996.

Jimmy L. Verner, Jr., Verner & Brumley, Dallas, for appellants.

Eric Robertson, Keith D. Maples, Austin, for appellee.

Before DAVIS, C.J., and CUMMINGS and VANCE, JJ.

**OPINION**

CUMMINGS, Justice.

This is an appeal from the granting of a motion for summary judgment. In their sole point of error, Dennis and Diane Cornelison,

---

4. The dates are calculated in accordance with Rule 4, Texas Rules of Civil Procedure.

the appellants and the prospective adoptive parents, contend the trial court erred in granting summary judgment in favor of Rana Newbury, the biological mother. They contend a genuine issue of material fact exists as to whether Ms. Newbury voluntarily left her child with another not the child's parent and expressed an intent not to return when she arranged for the Cornelisons to adopt her newborn child and allowed the Cornelisons to name the child and take him home with them. Tex.R.Civ.P. 166a(c); Tex.Fam.Code Ann. § 161.001(1)(A) (Vernon 1996).

## RELEVANT FACTS

To a certain point, the facts of this case are undisputed: The Cornelisons met Ms. Newbury for the first time in July 1995 at a mutual friend's home. At this meeting, Ms. Newbury told Mrs. Cornelison that she was going to place her unborn child up for adoption and that a prior adoption arrangement had not come to fruition. Ms. Newbury ask Mrs. Cornelison if she and her husband would be interested in adopting the child. After several days of consideration, the Cornelisons agreed to adopt Ms. Newbury's child but sought assurance from Ms. Newbury that she was certain of her decision and that she would not later change her mind. Receiving assurance from Ms. Newbury, the Cornelisons hired an attorney to complete the adoption. In addition to cooperating with the Cornelison's attorney herself, Ms. Newbury also assisted the Cornelisons in obtaining the consent of the child's father, James George. Mr. George signed a Waiver of Interest in the Child pursuant to Tex.Fam. Code Ann. § 161.106 (Vernon 1996).

Ms. Newbury gave birth to a male child on September 7, 1995. That afternoon, with the consent of Ms. Newbury, the Cornelisons were named temporary joint managing conservators of the child. The Cornelisons named the child, made the decision to have him circumcised, and the day after the child was born, the Cornelisons took the child to their home in Joshua, Texas.

Different versions of the facts develop from this point with the exception that both the Cornelisons and Ms. Newbury agree that Ms. Newbury never signed an affidavit relinquishing her parental rights to the child. According to Ms. Newbury, she regretted her decision "almost immediately" and wanted her child back, a fact she conveyed to the Cornelisons within two weeks of the birth of the child. The Cornelisons maintain that Ms. Newbury did not indicate that she had changed her mind until October 16, 1995, almost six weeks after the child's birth.

The Cornelisons filed their original petition for termination and adoption of the child on October 26, 1995. On November 8, 1995, James George, the biological father, filed a plea in intervention requesting the Cornelisons be allowed to adopt the child or, in the alternative, that he be named sole managing conservator. Ms. Newbury filed her answer, contesting the termination of her parental rights and adoption on November 15, 1995, and her motion for summary judgment was granted by the trial court on February 19, 1996.

## STANDARD OF REVIEW

In order to involuntarily terminate someone's parental rights, the trial court must find: (1) a statutory violation and (2) that the termination is in the best interest of the child. Tex.Fam.Code Ann. § 161.001 (Vernon 1996). The legislature has enumerated fourteen instances in which parental rights may be involuntarily terminated. Id. In this case, only one of those situations is relevant. Section 161.001(1)(A) allows for the involuntary termination of parental rights if the court finds by clear and convincing evidence that "the parent has voluntarily left the child alone or in the possession of another not the parent and expressed an intent not to return." Id. § 161.001(1)(A).

To prevail on a motion for summary judgment, the movant has the burden of establishing that there is no genuine issue of material fact and that the movant is entitled to judgment as a matter of law. Tex. R.Civ.P. 166a(c); *Cathey v. Booth*, 900 S.W.2d 339, 341 (Tex.1995); *Allen v. City of Midlothian*, 927 S.W.2d 316, 319 (Tex.App.— Waco 1996, no writ). In reviewing a motion for summary judgment, we must accept as true evidence in the nonmovant's favor, indulging every reasonable inference and re-

solving all doubts in favor of the nonmovant. *Nixon v. Mr. Property Management Co.,* 690 S.W.2d 546, 548–49 (Tex.1985).

## SUMMARY JUDGMENT EVIDENCE

The issue we address is whether the summary judgment evidence presented to the trial court demonstrated, as a matter of law, that Ms. Newbury did not voluntarily leave her child with another not the child's parent and express an intent not to return. If it did, the trial court acted properly in granting the summary judgment in favor of Ms. Newbury.

■ The only evidence in support of Ms. Newbury's motion for summary judgment was her own affidavit stating that she changed her mind "almost immediately" and that, within two weeks after the child's birth, she told the Cornelisons she wanted the child back. However, there is evidence contradicting Ms. Newbury's affidavit. In their response to Ms. Newbury's motion for summary judgment, the Cornelisons attached Mrs. Cornelison's affidavit which stated that Ms. Newbury never made any effort to see the child on her own, never sent any gifts to the child, never sent any money to the Cornelisons for the child's care, and never asked about the child's well-being. According to Mrs. Cornelison's affidavit, the first time Ms. Newbury indicated that she wanted her child back was on October 16, 1995, almost six weeks after the child's birth.

■ The only time an interested witness' testimony may be considered adequate summary judgment evidence is when it is: (1) uncontroverted; (2) clear, positive, and direct; (3) otherwise credible and free from contradictions and inconsistencies, and (4) could have been readily controverted. Tex. R.Civ.P. 166a(c); *Casso v. Brand,* 776 S.W.2d 551, 558 (Tex.1989). A statement of an interested party, testifying as to what he intended, is self-serving, does not meet the standards for summary judgment proof, and will not support a motion for summary judgment.

*See Valley Stockyards Co. v. Kinsel,* 369 S.W.2d 19, 20 (Tex.1963); *Clark v. Pruett,* 820 S.W.2d 903, 906 (Tex.App.—Houston [1st Dist.] 1991, no writ).

Because we must accept all evidence in the nonmovant's favor as true, we find that there was a genuine issue of material fact as to whether Ms. Newbury voluntarily left her child with the Cornelisons and expressed an intent not to return.

## *SWINNEY V. MOSHER*

Ms. Newbury relies on the case of *Swinney v. Mosher* to support the contention that she did not voluntarily leave her child with the Cornelisons, expressing an intent not to return, and was therefore entitled to judgment as a matter of law. 830 S.W.2d 187 (Tex.App.—Fort Worth 1992, writ denied). In *Swinney,* the court held that, in order for the biological mother's actions to fall within the purview of section 161.001(1)(A), the mother would have to abandon her child or take such willful action "as would imply a conscious disregard or indifference to such child in respect to the parental obligation that the parent owes to the child." *Id.* at 193.

Without addressing the merits of the *Swinney* decision, we find the facts of the case at bar distinguishable.[1] In *Swinney,* the biological mother arranged, prior to the birth of the child, to give her child up for adoption. *Id.* at 190. After the child's birth, the biological mother signed an affidavit relinquishing her parental rights to the child and gave the child to the adoptive parents to take home. *Id.* The day after the child was born, the biological mother contacted the adoptive parents and told them she had changed her mind and wanted her child back. *Id.* When the adoptive parents refused to give the child back to the biological mother, she took legal action to have her child returned. *Id.* She revoked her affidavit of relinquishment of parental rights after the prescribed period. *Id.* at 191. She also attended every hearing regarding the child and visited the child when permitted to do so.

1. We note that the Amarillo Court of Appeals criticized the Fort Worth court's holding in the *Swinney* opinion. *In re R.D.S.,* 902 S.W.2d 714, 720–21 (Tex.App.—Amarillo 1995, no writ). The court stated that it was hesitant to add the element of abandonment to section 161.001(1)(A) of the Family Code when the legislature had included "clear and precise elements describing specific acts and a particular *mens rea.*" *Id.* at 720.

*Id.* at 190. In light of these facts, the Fort Worth Court of Appeals held that the actions taken by the biological mother in arranging for the adoption of her newborn baby and allowing the prospective adoptive parents to take the child home could not be construed as voluntarily leaving the child in the possession of another not the parent and expressing an intent not to return because there was no evidence of abandonment. *Id.* at 193–94.

Here, we are presented with evidence that Ms. Newbury did not take any initiative to see the child after he went home with the Cornelisons, that she did not send any gifts to the child or any money to the Cornelisons to help defray the expense of caring for the child, and that she did not ever inquire about the child's well-being. Even assuming, *arguendo,* that Ms. Newbury changed her mind "almost immediately" about giving her child up for adoption, her actions thereafter are inconsistent with that assertion, whereas the biological mother in *Swinney* acted upon her changed mindset immediately. Therefore, because *Swinney* is distinguishable from the present case, Ms. Newbury's reliance on it in support of her contention that she was entitled to judgment as a matter of law is misplaced.

For the reasons set forth above, the trial court's order granting summary judgment in favor of Ms. Newbury is reversed and the cause remanded for a trial on the merits.