NOTICE: Summary decisions issued by the Appeals Court pursuant to M.A.C. Rule 23.0, as appearing in 97 Mass. App. Ct. 1017 (2020) (formerly known as rule 1:28, as amended by 73 Mass. App. Ct. 1001 [2009]), are primarily directed to the parties and, therefore, may not fully address the facts of the case or the panel's decisional rationale. Moreover, such decisions are not circulated to the entire court and, therefore, represent only the views of the panel that decided the case. A summary decision pursuant to rule 23.0 or rule 1:28 issued after February 25, 2008, may be cited for its persuasive value but, because of the limitations noted above, not as binding precedent. See Chace v. Curran, 71 Mass. App. Ct. 258, 260 n.4 (2008).

COMMONWEALTH OF MASSACHUSETTS

APPEALS COURT

22-P-1052

ADOPTION OF WREN.[1]

MEMORANDUM AND ORDER PURSUANT TO RULE 23.0

The father appeals from a decree issued by a Probate and Family Court judge terminating his parental rights to his daughter and dispensing with the need for his consent to the adoption of the child by the child's mother and husband. The father maintains that the decree is void for lack of subject matter jurisdiction and that an earlier judgment from a Texas court precludes a termination of parental rights determination in Massachusetts. The father also contends that the judge erred, first by drawing an adverse inference from his refusal to answer certain questions based on his fifth amendment right not to incriminate himself, and second, by concluding that termination of his parental rights was in the child's best interests.[2] We affirm.

---

[1] A pseudonym.

[2] The child asks this court to affirm the judgment.

Background.  The mother and the father were divorced by a judgment from a Texas court in March 2016.  The judgment "finally dispose[d] of all claims and all parties" except for certain child support orders.  As part of the divorce, the mother asked the court to terminate the father's parental rights to their child, who was born in May 2012.  If granted, the request would have "divest[ed] the [father] and the child of all legal rights and duties with respect to each other."  Tex. Fam. Code § 161.206(b).  The Texas court denied the request, reasoning that termination was not "in the best interest of the child."  See Tex. Fam. Code § 161.005(a).  The Texas court thus allowed the father to "retain[] the status of parent," Guardianship of Zeke, 422 Mass. 438, 445 (1996), with a constitutionally protected interest in a relationship with the child.  Smith v. McDonald, 458 Mass. 540, 544 (2010).

Still, the Texas court severely limited the father's rights, see Tex. Fam. Code § 161.205 (court denying termination petition "shall . . . render any order in the best interest of the child"), appointing him possessory conservator with no right to custody or visitation or to have information about or input into the child's upbringing, among other privileges and duties of parenthood.  See Tex. Fam. Code §§ 153.006, 153.192, 153.193.[3]

_____

[3] The father was ordered to pay child support.  See Tex. Fam. Code § 153.075.

The mother was appointed sole managing conservator for the child, see Tex. Fam. Code § 153.005, with all parental rights, including of sole custody and "to designate the primary residency of the child." See Tex. Fam. Code §§ 153.073, 153.074, 153.132.

The mother became engaged and she, the child, and the future husband began living together as a family in July 2016. In September 2016, the mother filed a notice of change of address with the Texas court, advising that her Texas address would change "in approximately six months," to one in Massachusetts. It was only two months after that, however, on November 23, 2016, that the mother notified the court her address "will change to [one in] MA . . . on December 2, 2016."

In December 2016, the mother, the husband, and the child moved to the address listed in the November notice, though at trial neither the mother nor the husband identified a specific date when the move occurred and the judge did not make a finding about one.

In February 2017, the mother and the husband married. On June 5, 2017, the mother and the husband commenced this action in Massachusetts, G. L. c. 210, § 1, by filing a petition seeking permission to adopt the child and change her name. Among other things, the petition alleged that "the child has

resided for at least six months in the home of the Petitioner(s)," identifying a Massachusetts address.

Still having some legal rights in relation to the child, the father objected to the petition, see G. L. c. 210, § 2, and filed a motion to dismiss claiming that the Texas court's decision not to terminate parental rights had a preclusive effect on the proceeding in Massachusetts. The parties engaged in discovery and testified at trial, along with other witnesses, over the course of five nonconsecutive days between February and June of 2018. On April 17, 2019, the court entered a decree terminating the father's parental rights as to the child and declaring the child to be the child of the mother and stepfather.[4]

Discussion. 1. Subject matter jurisdiction. For the first time on appeal, the father contends that the adoption decree is void because the court lacked subject matter jurisdiction. See Irwin v. Commonwealth, 465 Mass. 834, 840 n.17 (2013) (challenge to subject matter jurisdiction may be raised at any time, including on appeal). He argues that the record fails to "conclusively establish" that the child was domiciled in the Commonwealth six months prior to the

---

[4] The father's motion to dismiss was denied on January 18, 2018, as noted in the decree.

4

commencement of the adoption proceeding so as to confer home state jurisdiction on the court.  See Massachusetts Child Custody Jurisdiction Act (MCCJA), G. L. c. 209B, § 2(a)(1) (home state defined as state where child resided with parent at least six months prior to commencement of proceeding).

The adoption proceeding commenced on June 5, 2017, with the filing of the petition, wherein the mother averred that the child had been residing with her for the prior six months; the petition listed the mother as living at an address within the Commonwealth.  In a November 23, 2016 notice filed in the Texas court, the mother stated that she and the child would be moving to Massachusetts on December 2, 2016.  Finally, the mother testified that she and the child had, in fact, moved to Massachusetts in December 2016, consistent with the earlier notice.  Thus, every reasonable inference from the record supports the conclusion that the child lived in the Commonwealth with the mother for six months prior to the commencement of the adoption proceeding.  The father's argument that the mother and the child may not have moved to Massachusetts on December 2, 2016 rests on nothing more than speculation; the father points to no fact that supports his assertion.  Moreover, the father points to no authority requiring a judge, in the absence of any question regarding the matter, to make an explicit finding on

5

subject matter jurisdiction.  Cf. Redding v. Redding, 398 Mass. 102, 106 (1986) (implicit finding of proper jurisdiction).

2.  Issue preclusion.  The father next claims that the judge erred in "ignoring" the Texas court's finding that termination of his parental rights was not in the child's best interest.  But, the judge did not overlook the issue.  Rather, the judge denied the father's motion to dismiss which was premised on his claim that the doctrine of res judicata barred the court in Massachusetts from terminating his parental rights.

Recognizing that a best interest determination may be revisited upon changed circumstances without violating principles of issue preclusion, the father contends that the judge's findings do not make clear how much of the best interest determination was based on new allegations so as to enable proper review.  The father, however, has failed to provide this court with a full record of the evidence presented in the Texas action.  We accordingly do not have a record of what facts were presented to the Texas court "or the basis of" its decision.  See G.B. v. C.A., 94 Mass. App. Ct. 389, 397-398 (2018).  Moreover, as discussed infra, significant recent evidence of the father's unfitness was presented to the judge in this case.  As a result, the father has not shown that collateral estoppel applies.

6

3.  Adverse inference.  The father declined to answer certain questions at trial, invoking his Fifth Amendment privilege against self-incrimination.  The judge accordingly drew an adverse inference against him.  "The drawing of an adverse inference is permissible in a parental rights proceeding."  Adoption of Patty, 489 Mass. 630, 643 (2022).  See Care & Protection of M.C., 479 Mass. 246, 262 (2018) ("the Juvenile Court is permitted to draw adverse inferences from a parent's refusal to testify").  Normally a trial judge's decision to draw an adverse inference is reviewed for abuse of discretion, Adoption of Helga, 97 Mass. App. Ct. 521, 526 (2020), but the father does not challenge the judge's exercise of discretion.  He claims that an adverse inference was not permissible as a matter of law.  We disagree.

The father argues that there is no reported case holding that an adverse inference can be drawn in a termination case, as opposed to a custody case, see Custody of Two Minors, 396 Mass. 610, 617 (1986), from a parent's invocation of his privilege against self-incrimination, as opposed to simply choosing not to testify, Adoption of Nadia, 42 Mass. App. Ct. 304, 307 (1997), and asks us to rule that such an inference was not permitted here.  "We have, however, repeatedly rejected incorporating the full panoply of constitutional rights afforded criminal defendants into proceedings involving . . . termination of

7

parental rights." Adoption of Don, 435 Mass. 158, 169 (2001).

We have also explained that "it is unnecessary to draw a

distinction between [termination and custody] proceedings where

there is none with respect to the ultimate burden of proof,

i.e., clear and convincing evidence." Adoption of Nadia, supra.

Cf. Adoption of Patty, 489 Mass. at 639-640 (extending reasoning

of Custody of Two Minors, supra to termination proceedings).

"It was perfectly permissible for the judge to draw" an adverse

inference in this case. Matter of a Care & Protection Summons,

437 Mass. 224, 235 (2002).

4. Best interests. The judge found the father unfit and

that it was in the child's best interest to terminate the

father's parental rights. The father "acknowledges that the

trial judge's findings were detailed and there was evidence to

support" them. He only faults the judge for concluding that

termination was in the child's best interest when the Texas

court found otherwise and the mother and the husband did not

demonstrate that "enough has changed since the divorce judgment

to establish by clear and convincing evidence that it is now in

the Child's best interest to sever her ties with Father." See

Malachi M. v. Quintina Q., 483 Mass. 725, 734 (2019); Adoption

of Karla, 46 Mass. App. Ct. 64, 70 (1998) (best interest

determination may be revisited upon changed circumstances). The

8

record, however, provides ample support for the judge's determination and we discern no abuse of discretion.

In finding the father unfit to parent the child, the judge considered all of the statutory factors and found that a number of them applied with force. See G. L. c. 210, § 3(c) (factors required to be considered). For example, the judge considered the father's past "repeated, severe physical abuse" of the mother and how it was likely to impact the child. See G. L. c. 210, § 3 (c) (ii) (requiring consideration of domestic violence).

The judge also found that the father had ample access to services to remedy his behavior. The father took classes addressing substance abuse, anger management, domestic violence and parenting, among other things. Despite participating in these services, the father had failed to rehabilitate himself and did not take responsibility for his actions, as demonstrated by his prison disciplinary record involving rules violations, inappropriate communications with the child, and persistent claims that he was wrongfully convicted. See G. L. c. 210, § 3 (c) (viii) (requiring consideration of parent's lack of effort to remedy conditions creating risk to child).

The judge also considered that the father last saw the child when she was less than a year old and remained imprisoned for his crimes (and therefore unavailable to the child) at the

conclusion of the adoption trial, at which point the child was four years old.  The judge also found that upon his discharge from prison, the father would be a registered sex offender and therefore severely limited to the places he could go with the child.  See G. L. c. 210, § 3 (c) (vi) (requiring consideration of parent's failure to provide proper care and reasonable expectation that parent will not be able to provide care within reasonable time); see G. L. c. 210, § 3 (c) (xiii) (requiring consideration of parent's conviction of felony of such a nature that child will be deprived of stable home for period of years).  Finally, the judge credited expert testimony that the father's failure to take responsibility bodes poorly for any prospect that the father's behavior will change and that this creates a risk of harm to the child.

Thus, there was ample evidence, subsequent to the Texas action, supporting the judge's best interest determination.

<u>Decree affirmed</u>.

By the Court (Vuono, Singh & Englander, JJ.[5]),

Clerk

Entered: November 14, 2023.

---

[5] The panelists are listed in order of seniority.